THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* VICTOR CLU-
NET, Next Friend of C. CLUNET and others, SAMUEL H. B.
MERRYMAN and others.

OPENING STREETS: ORDINANCES OF THE CITY OF BALTIMORE, CONSTRUC-
TION OF: SUPERIOR COURT, JURISDICTION OF, IN STREET CASES.—An
Ordinance of the Mayor and City Council of Baltimore, approved May 5th,
1864, to open a street in continuation of Holliday street, by its 2nd section
required the Judges of the Appeal Tax Court, in the condemnation and
opening of the proposed street, to proceed in accordance with the pro-
visions of Ordinance No. 15, of the Revised Ordinances of 1858, approved
June 5th, 1858. The 7th section of the latter Ordinance provided, "That
in every case where it shall be necessary, to effect the object proposed,
that a part only of a house and lot, or of a lot, shall be taken and used, or
destroyed, and the owner thereof shall claim to be compensated for the
whole, the Commissioners shall ascertain the full value thereof, as if the
whole lot and improvements were necessary to be taken and used for such
proposed object." It then provides for the payment to the owners of the
whole of such valuation, and for the sale of the residue of the lot not ne-
cessary to be taken and used for the street; and the amount which is de-
rived from such sale is appropriated to the payment of the expense of the
improvement, thereby diminishing to that extent the cost of the work as-
sessed upon the parties benefited. On a bill filed for an injunction to pre-
vent the opening of the street—HELD:

1st. That this provision of the Ordinance is not obnoxious to the objection
that it authorizes the taking of the property of a citizen, when it is not
required for public use.

2nd. That it is not a valid objection to the Ordinance, that it authorizes an
appeal to the Criminal Court, and not to the Superior Court.

3rd. That jurisdiction in such cases is not given to the Superior Court, by
the 11th section of the 4th Article of the Constitution of 1851, as the gen-
eral words there used, must be construed as defining the original jurisdic-
tion of the Superior Court, and do not refer to appeals from inferior tri-
bunals, or in street cases; they are regulated by statute.

4th. That the Act of 1853, ch. 451, which authorized the Superior Court to
exercise jurisdiction over appeals in street cases concurrently with the
Criminal Court, was a constitutional exercise of legislative power.

5th. That it was competent for the Mayor and City Council of Baltimore, in
legislating on such cases, to provide for an appeal either to the Superior
or Criminal Court.

6th. The Code, vol. 2, Art. 4, sec. 837, removes all doubt and difficulty from
the question, because by it the power and option is plainly given to the
Mayor and City Council, in providing for appeals, to direct that they shall
be taken either to the Superior or the Criminal Court.

57        v. 23.

Mayor & C. C. of Balto. *vs.* Clunet, Merryman, *et al.*

MUNICIPAL CORPORATIONS, CONSTRUCTION OF ACTS OF.—While on the one hand municipal corporations, having delegated to them a limited jurisdiction, and being entrusted with the power of dealing with the property and rights of the citizen, ought to be restrained within the strict limits of their authority, and where they transgress those limits, it is the duty of the Courts to declare their acts void, in so far as they have exceeded their powers; yet, on the other hand, where the exclusive jurisdiction and power to legislate upon a given subject have been conferred by law upon such a corporation, every intendment and presumption ought to be made in support of their acts.

——: CONDITIONAL LEGISLATION.—The 5th section of the Ordinance before mentioned, approved May 5th, 1864, provides that the Ordinance shall not take effect until certain cases of *mandamus* pending in the Court of Appeals, and removed there by writ of error to the Superior Court, shall have been dismissed, and other cases against the city, growing out of the repeal of the Ordinance of October 1858, shall have been released and abandoned.—HELD:

1st. That this is not delegating to others the discretion vested by law in the Mayor and City Council.

2nd. That a valid law may be passed, to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties; and the same principle applies to an Ordinance passed by a municipal corporation.

APPEAL from the Circuit Court of Baltimore city.

The bill of complaint of the appellees, filed on the 6th day of February 1865, alleged, that by the Act of 1838, ch. 226, power was conferred upon the Mayor and City Council of Baltimore to provide for laying out, opening, extending, widening, straightening and closing up, in whole or in part, any street, lane, square, alley or alleys, within the bounds of the city, which, in their opinion, the public convenience might require; and the Mayor and City Council of Baltimore, seeking to provide for the exercise of such power, passed an Ordinance, entitled, "An Ordinance to provide for exercising certain powers vested in this corporation, in relation to streets in the city of Baltimore," which was approved June 5th, 1858, authorizing the appointment of three Commissioners to act in effecting the purposes of said Ordinance, and in the taking of property, and fixing of assessments for benefits, as provided by the Ordinance, and

that by an Ordinance approved February 28th, 1861, the powers of the said Commissioners were vested in the three Judges of the Appeal Tax Court; that the Mayor and City Council of Baltimore afterwards passed an Ordinance approved on the 5th day of May 1864, entitled, "An Ordinance to open a street in continuation of Holliday street, from Baltimore street to Second street," by the first section whereof, the Judges of the Appeal Tax Court were authorized and required to open a street in continuation of Holliday street, from Baltimore street to Second street, the lines of which proposed street are specifically mentioned in said first section; that by the second section, the Judges of the Appeal Tax Court are required to proceed in all respects in accordance with the provisions of said Ordinance of 1858, except in so far as otherwise provided by the said Ordinance of 1861, and by the fifth section of said Ordinance of 1864, and that the Judges of the Appeal Tax Court have proceeded to carry out the provisions of said Ordinance by assessing or assuming to assess the value of the property to be taken and appropriated for said object, and the necessary expenditures, and by imposing the amounts of assessments for benefits, which, it is pretended, will accrue to the complainants and others, who may be the owners of property upon or near the line of the proposed street, and that they have sold or attempted to sell the bricks and other materials in the improvements of your orators, Neal and the Siscos, which have been condemned as aforesaid.

The bill further states, that the complainants, the Clunets and Merryman and wife, are the owners of a lot on the south side of Baltimore street, adjoining the property of the Siscos, and fronting sixteen feet on Baltimore street, with a depth of one hundred and eighty feet, and that the said lot has been assessed, for supposed benefits, in the large sum of $6,300, and that the passage of the said Ordinance, and all the proceedings had by virtue of its provisions, were wholly against the wish and without the concurrence of said Clunets and said Merryman and wife, and that the lot will not

be benefited at all, or, at any rate, not at all in proportion to the amount of benefits assessed upon it.  That the complainant, Neal, is the owner of a lot on the south side of Baltimore street, with a front of twenty-five feet, and a depth of one hundred and eighty-two feet, and immediately opposite the present line of Holliday street, held under a renewable lease for ninety-nine years, and that for many years past he has occupied the property in his business, as a wholesale and retail dry-goods merchant, and has, by means of the very advantageous location of his property upon and opposite public thoroughfares, succeeded in securing an extensive and remunerative trade, and that there stands upon the property a large three-story warehouse, which said Neal has lately repaired at great expense.  That the Siscos are also the owners of a valuable lot of ground on the south side of Baltimore street, of the same dimensions as that of said Neal, and adjoining the same on the east, which they acquired as the widow and heirs-at-law of —— Sisco, deceased, and that for many years before his death, said —— Sisco occupied the premises in conducting the business of the manufacture and sale of fringes, &c., and that since his death, his widow and children have there continued the same business, so that the property has become well known as a position for such trade, and that the Siscos have erected, at very great expense, a three-story warehouse upon the said lot of ground.

The bill further states, that the Judges of the Appeal Tax Court, in the exercise of their pretended powers under the Ordinance of 1864, have condemned, or assumed to condemn the whole of the property of Neal and the Siscos, allowing Neal the sum of $17,287.50, and the Siscos the sum of $47,631.25, as damages for the taking of the same, but allowing no compensation whatever, for the ruinous losses to be inflicted upon them in the destruction of their business, which will result from their being deprived of the good will of their said properties; and that the ordinance was passed, and such condemnation had against their will,

and in spite of their remonstrance and protest. It is further alleged, that by the 7th section of the Ordinance of 1858, governing the action of the Judges of the Appeal Tax Court in executing the Ordinance of 1864, it is provided, that in every case in which it shall be necessary to effect the object proposed, that part only of a house and lot, or of a lot, shall be taken, used or destroyed, and the owner shall claim compensation for the whole, the Commissioners shall ascertain its full value, as if it were necessary to take the whole lot and improvements for such proposed object, and that the whole amount of such valuation, when finally determined upon, shall be paid or tendered to the owners, or vested in city stocks, for their use, before any part shall be destroyed, removed or used, and that the Commissioners may, after having given the prescribed notice, sell at public auction the materials of any house, which it may be necessary to remove in whole or part, and the residue of any lot of which a part shall be taken and used; that the Judges of the Appeal Tax Court have condemned, not only such lots and improvements as are situate upon the proposed bed of the street, but also improvements belonging to various parties, and a large quantity of ground belonging to the German Reformed Church and other parties, not necessary to effect the object proposed, and not to be used as a part of the bed of the street to be opened in pursuance of the Ordinance, and have assumed to sell the same, and thus render the Clunets, and others, still further responsible, and the bill insists, that such provisions of the ordinance are unwarranted by the Code, and repugnant to the fair and legitimate exercise of the power to take the property of the citizen for public uses, and constitute an evasive and unconstitutional exercise of the power which is, and of right should be, fatal to the said Ordinance of 1864, and to all proceedings thereunder.

The bill further states, that by the 4th section of the Ordinance of 1864, it was provided, that in the settlement

with W. W. McClellan or Catherine M. Raborg, for any damages to be awarded him or her for the property condemned under the provisions of the ordinance, there should be first deducted the amount of two orders upon the Collector or Register of the city, one in favor of A. Hoen & Co., and the other in favor of the proprietors of the Holiday Street Theatre, (which were received in payment of the assessment upon those parties under the provisions of Ordinance No. 59, approved October 21st, 1858,) and of interest upon the same, or the same should be credited upon any assessment levied upon them under the provisions of the Ordinance of 1864, and that the 5th section of the Ordinance provided, that the same should not take effect until the said McClellan and Raborg, or their representatives, shall have given their written assent to the provisions of such 4th section; and the bill charges, that the said Ordinance was an attempt on the part of the appellant, to combine in an Ordinance professing to provide for the exercise of the right of eminent domain in the condemnation of property belonging to some of the complainants, and of the right of taxation in the assessment of supposed benefits upon the property of others of the complainants, the settlement of claims and disputes with which the complainants had no connection whatever, and which, in no manner related to the subject or object of the Ordinance, and also to render its existence and force dependent upon the assent of parties, who, like the complainants, were the owners of property within reach of condemnation and assessment, the rights and interests of your orators being thus made to rest upon the option of said other parties; and that it is insisted, that the right to take the property of the citizen for public use, is a delicate power, to be exercised only with the utmost fairness, and only in cases where its exercise may be demanded by the public convenience, and that the said Ordinance thus departing from the single purpose of taking property for a recognized and pressing public use, is an invalid assumption of power, and void.

The bill then states, that the Ordinance of 1858, modi_ fied by that of 1861, provides by its 9th section for an appeal from the Commissioners or Judges of the Appeal Tax Court only, to the Criminal Court of Baltimore, and that by the Act of 1853, ch. 451, entitled, "An Act to confer on the Superior Court of Baltimore city, concurrent jurisdiction, in the matter of opening and closing streets," concurrent jurisdiction with the Criminal Court of Baltimore, in appeals from the Commissioners for opening streets was conferred upon the Superior Court of Baltimore city, and that hence it was the right of the citizen at the time the said Ordinance of 1858, was passed, to have his appeal to either the Criminal Court of Baltimore, or the Superior Court of Baltimore city.   And that by the 83rd section of the 4th Article of the Code of Public Local Laws, the Mayor and City Council of Baltimore were empowered to make provision for the opening of streets, and were required to provide for the citizen by their Ordinance, the right of appeal to either of the said Courts, as he might deem best, from the decisions of any Commissioners or other persons acting as aforesaid, in the condemnation of property and assessment of benefits on the account of the opening of streets; and they are advised that such right of appeal was a valuable one, of which they could not rightfully be deprived.   But that the said Mayor and City Council of Baltimore have nevertheless sought, by their said ordinance, to deprive the complainants of selection, so guaranteed to them, and to restrict their right of appeal to the Criminal Court of Baltimore.   And the bill insists, that the said Act of 1838 was repealed by the adoption of the Code, and that it was the duty of the Mayor and City Council to provide by Ordinance, for the opening of streets, in accordance with the requirements of the Code, and that they possessed no power to pass any Ordinance for such object, unless the same should contain provisions granting and providing for appeals as aforesaid, to either of the said Courts, at the option of the party feeling himself aggrieved,

and that hence the Ordinance under which the Judges of the Appeal Tax Court assume to act in condemning the property of some of your orators, and assessing that of the others for benefits, and in proceeding to enforce such condemnation and assessments, is not warranted by the powers conferred upon the corporation. That notwithstanding the earnest remonstrances of your orators, and notwithstanding the grossly unjust and partial award of damages and assessment of benefits to your orators, and notwithstanding the failure to comply with the requirements of the law as aforesaid, in the passage of said ordinances, the said Judges of the Appeal Tax Court, and the Mayor and City Council of Baltimore, are insisting upon their right to deprive your orators of their property, and collect such assessments, and unless restrained by the interposition of this honorable Court, will remove the property of your orators, Neal and the Siscos, and destroy their business, and will subject your other orators to unjust and onerous burthens.

The bill then prays for subpœna and an injunction, which was granted; and the present appeal is taken from the order granting the injunction.

The cause was argued before Bowie, C. J., and Bartol, Cochran and Weisel, J.

*Wm. Schley, A. W. Machen* and *John Carson*, for the appellant :

On behalf of the appellant it is submitted :

I. That no reasonable objection lies to the provision contained in the 7th section of the Ordinance of 1858, No. 15, which is made the first ground for the application for an injunction. Where an entire lot is required, the city takes the whole, and pays for the whole. Where a part only is used, an estimate must be made of the damages to be caused by the taking of that part, and, if it be rightly made, the value of the residue will be the difference between the value of the whole and the sum thus allowed for damages. But,

as the market value of an existing entire lot, can be got at with more certainty than the damages which will be occasioned by the occupation of a part, the option is given the owner to require that the whole shall be taken off his hands, it being then left to the city to ascertain the proportion between the damages caused by the taking of part, and the value of the residue, in the best possible mode, viz : a sale of such residue at public auction. What it brings, being credited against the whole price paid the owner, leaves the exact amount of damages sustained by the lot, and really paid. *Albany St.*, 11 *Wend.*, 151.

II. The proviso ingrafted upon the Ordinance of 1864, might reasonably have been complained of by Wm. W. McClellan and Miss Raborg, but affected nobody else. It was perhaps void. It may be that the Mayor and City Council having determined that public convenience required the opening of the street, had no right to make the enjoyment of the improvement dependent upon any collateral condition whatsoever. But the question is merely speculative. The suits were dismissed, the releases executed, and the written assent given. Whether, therefore, the proviso was good or bad, valid or invalid, was immaterial at the time of the institution of the proceedings in question. In no case could it affect the validity of the ordinance itself. *Gordon vs. Mayor & C. C. of Balt.*, 5 *Gill*, 231, 241. *Herrick vs. Smith*, 1 *Gray*, 1, 21. *Wellington, & al., Petitioners*, 16 *Pick.*, 95, 97. *Morgan vs. Monmouth Plank Road Co.*, 2 *Dutch. N. J.*, 99. *Corning vs. Greene*, 23 *Barb.*, 48, 49. *Clarke vs. City of Rochester*, 24 *Barb.*, 446. *Northern Cent. R. R. Co., vs. Mayor & C. C. of Balto.*, 21 *Md. Rep.*, 93 *Mayer vs. Grima*, 8 *How.*, 490. See, also, the opinion of TANEY, C. J., 7 *How.*, 467, 468.

III. The third ground on which the bill is placed, viz : that public convenience or necessity does not call for the street —is plainly outside of the proper cognizance of a Court of Equity. To the discretion of the Mayor and City Council alone, the law confides the decision of the question of the

propriety of opening any street.   2 Code, Art. 4, sec. 837; 1838, ch. 226, sec. 1.   *Mayor & C. C. of Balto., vs. Graves,* 19 *Md. Rep.,* 351.   *Methodist Prot. Church vs. Mayor & C. C. of Balto.,* 6 *Gill,* 391.

IV. (1.)  By the 837th section of Article 4 of the Code of Public Local Laws, the Mayor and City Council of Baltimore are authorized to provide for granting appeals to the Criminal Court of Baltimore, or the Superior Court of Baltimore city.   The Ordinance of 1864, No. 68, by its 2nd section, adopted and incorporated the provisions of the Ordinance of 1858, framed under the Act of 1838, ch. 226, with which Act the Code agrees in every essential particular, in all that relates to the proceedings down to the time for taking appeals.

It could not have been the intention of the Legislature, that appeals relating to the same street, should be pending in two Courts at the same time.   The considerations which forbid such unseemly clashing in ordinary litigation, apply with ten-fold fo ce to the case of the opening of a street, with its complex adjustments of damages and benefits. The power of selection between the tribunals must be exercised by somebody.   Every one of the numerous individuals whose interests are involved, may appeal.   Who shall determine the Court in which the causes ot all shall be decided? To concede the privilege to the party who may spring first, is to encourage a race of litigation, where public policy rather calls for repose, and acquiescence in the fair conclusions of the tribunal of original jurisdiction.

It is opposed to all usage, in this State at least, to give to litigant parties a choice of appellate tribunals. The condition of the dockets of the respective Courts, or other circumstances of a general character, may make it more convenient to carry appeals in street cases, to the Superior Court rather than to the Criminal Court, or to the Criminal Court rather than the Superior Court.   *State vs. Graves,* 19 *Md. Rep.,* 315.   *Stewart vs. Mayor & C. C. of Balto.,* 7 *Md. Rep.,* 500.   Ord. 1853, No. 58.   A power

therefore, is conferred on the Mayor and City Council, to provide by Ordinance for appeal to the one or the other. This, we submit, is the natural and reasonable construction of the clause under consideration. And it is the construction which, ever since the passage of the Act of 1853, ch. 451, has been uniformly acted on and received without question. 1827, ch. 21, sec. 2; 1834, ch. 277; 1838, ch. 227; Ord. 1841, No. 10, approved by the General Assembly, 1845, ch. 31.

(2.) We have hitherto assumed, for the sake of argument, that the Act of 1853, ch. 451, and the corresponding enactment in the Code, were valid exertions of legislative power. But the General Assembly could not constitutionally confer coordinate jurisdiction, in street cases, upon the Superior Court. Before the adoption of the Constitution of 1851, the jurisdiction to hear appeals in this class of cases, was vested only in Baltimore City Court. The Constitution, in creating the Criminal Court of Baltimore, defined its jurisdiction thus: "Who shall have and exercise all the jurisdiction now exercised by Baltimore City Court." When, therefore, the same instrument, in establishing the Court of Common Pleas, and the Superior Court, is silent respecting appeals in cases of opening streets, and, after dividing between these two last mentioned Courts the several species of jurisdiction which previously belonged to the old County Court, declares in general terms, as to the Superior Court, that it should have jurisdiction "in all other civil cases which have not been heretofore assigned to the Court of Common Pleas," it seems a necessary inference that there was no intention to interfere with the jurisdiction previously enjoyed by the City Court, and by the Constitution conferred upon the Criminal Court. The general intent to avoid any over-lapping of jurisdiction, is evident, and the comprehensive clause at the end of the 11th section of Article 4, must be construed with reference to the general intent. That the Criminal Court has jurisdiction, is clear, and is not disputed. Is it not equally clear, that the framers of the Con-

stitution never meant that part of its jurisdiction should be shared by the Superior Court. The Superior Court is carefully prohibited from trenching on the jurisdiction of the Court of Common Pleas. Why is it to be supposed that it should be at liberty to encroach upon that of the Criminal Court. See Const, 1851, Art. 4, secs. 10, 11 and 13.

The point now advanced is not new. The objection, that it was not competent to the Mayor and City Council of Baltimore, under color of the Act of 1853, to confer the right to entertain an appeal from the Commissioners for opening streets, was taken in the case of *Cecil Alley*, in 1854, and the decision of the Superior Court (FRICK, J.) against its own jurisdiction was acquiesced in. *Darlington vs. Mayor & C. C. of Balt., Superior Ct.*, 1854. There is, therefore, nothing in the fourth ground on which the application for the injunction was based, And the fifth ground seems to be but another form of stating the same matter,

V. The complainants could have found effectual and adequate relief in the Court of Law, upon appeal from the Commissioners for opening streets. *Methodist Prot. Church vs. Mayor & C. C. of Balt.*, 6 *Gill*, 391. *Alexander vs. Mayor & C. C. of Balt.*, 5 *Gill*, 383. *Stewart vs. Mayor & C. C. of Balt.*, 7 *Md. Rep.*, 500. *Richardson vs. Mayor & C. C. of Balt.*, 8 *Gill*, 433. The cases of *Swan vs. The City of Cumberland*, 8 *Gill*, 150, shows that a *certiorari* would lie, if no appeal had been provided; and the case of *Balt. & Havre-de-Grace Steamboat Co. vs. Northern Central Railway Co.*, 15 *Md. Rep.*, 193, that the question could be raised on appeal. The case of *Western Md. R. R. Co. vs. Owens*, 15 *Md. Rep.*, 199, is clearly distinguishable. There, was an attempted usurpation of dominion over the property of a citizen directly in the teeth of the express provision of the Constitution, and was, on that ground, proper for equity.

*Thos. S. Alexander* and *I. Nevitt Steele*, for the appellees:

The appellees will maintain the following points:

1st. That the provision of the Ordinance of the 5th of

June 1858, by which, if it is necessary to take and use only a part of a house and lot, or of a lot of ground, for opening a street, the owner thereof may claim and receive compensation for the whole, is not authorized by or in accordance with the Constitution and Laws of the State; and assessments of benefits to pay damages which have been in part ascertained and fixed under such provision, are illegal and invalid. *The People vs. White,* 11 *Barb.,* 28. *Mills vs. St. Clare Co.,* 8 *How.,* 585.

2nd. That the appellant is a municipal corporation, acting as the agent of the State, in the exercise of certain powers for opening streets, delegated to it by the State, and to be exercised by it, under the express provisions of law, when the public convenience requires; that it cannot make bargains and contracts for the exercise of those powers; that it would be not merely against right, but also dangerous and against public policy, that the high and extreme power of condemnation of property, and the oppressive power of taxation, should be exercised in such a manner by a mere municipal corporation, acting in the capacity of agent for the State; that the Ordinance of May 5th, 1864, is upon its face a bargain, relating to matters not involved in the proposed opening of a street, and was to have no force or effect, except at the will and option of certain individuals, who themselves had property liable to condemnation or assessment under it, and upon whose private and individual interests and wishes the operative existence of a public ordinance was thus made to depend, and that the said ordinance was therefore invalid. *McClellan vs. Graves, et al.,* 19 *Md. Rep.,* 373. *Mayor & C. C. of Balt. vs. Howard, et al.,* 15 *Id.,* 376. *State vs. Mayor & C. C. of N. Y.,* 3 *Duer,* 149. *Presb. Church vs. City of New York,* 5 *Cowen,* 540. *N. Y. & Harlem R. R. Co. vs. N. Y. City,* 1 *Hilton,* 586. *Parkes vs. Com.,* 6 *Barr,* 507. *Goszle vs. Georgetown,* 6 *Wheat.,* 597. *City of Camden vs. Mulford,* 2 *Dutcher,* 49, 594. *Parks vs. City of Boston,* 8 *Pick.,* 217. *Bartow vs. Himrod,* 8 *N. Y.* (4 *Seld.*) *Rep.,* 483. *Thomas vs. Cramer,*

15 *Barb.*, 112. *Mayor & C. C. of Balt. vs. Marriott*, 9
*Md. Rep.*, 160. *People vs. Corp. of Albany*, 11 *Wend.*, 543,
544. *Western Savings Fund vs. Philadelphia*, 31 *Pa. Rep.*,
182, 183.

3rd. That the Ordinance of June 5th, 1858, is invalid,
because it did not provide for an appeal to the Superior
Court from the decision of the Commissioners for opening
streets, as required by law. Code, vol. 2, Art. 4, sec. 837.

4th. That the appellees were entitled to the injunction
prayed in their bill, as the proper remedy to prevent the
enforcement of said illegal and invalid ordinances. *Com-
monwealth vs. Chamberlaine*, 7 *Mass.*, 167. *Commonwealth
vs. Sawin*, 2 *Pick.*, 547, 549. *Kane vs. Mayor & C. C. of
Balt.*, 15 *Md. Rep.*, 240. *Lamot vs. Morgan*, 8 *Md. Rep.*, 5.

BARTOL, J., delivered the opinion of this Court:

This is an appeal from an order of the Circuit Court of
Baltimore city, passed on the 6th day of February 1865,
granting an injunction to restrain the appellant, its officers,
agents and servants from proceeding to enforce an Ordi-
nance entitled, "An Ordinance to open a street in continua-
tion of Holliday street, from Baltimore street to Second
street," and from taking any further steps or proceedings
thereunder for the opening of such street, until the matter
can be heard and determined in equity.

The complainants are the owners of property on the south
side of Baltimore street, and the apprehended damage and
injury to result to them from the execution of the Ordinance,
are sufficiently alleged on the face of the bill to entitle them
to maintain the suit; provided a Court of Equity has juris-
diction of the cause, and the objections urged to the validity
of the Ordinance be well founded.

These objections will be first considered; they are set
forth by the bill in a very clear and forcible manner, and
have been presented in the argument with very great abili-
ty and power. Indeed, the case has been most ably argued
on both sides; and it is a source of regret that in the press

of business upon the Court, and the desire of rendering a speedy decision, we have not been able to enter upon so thorough an examination and discussion of the interesting questions involved as their importance deserves. We must content ourselves with a brief statement of the conclusions we have reached, after as full an examination of the authorities and consideration of the subject as we have been able to make.

By the second section of the Ordinance, the Judges of the Appeal Tax Court, in the condemnation and opening of the proposed street, are required to proceed in accordance with the provisions of Ordinance No. 15, of the Revised Ordinances of 1858, approved June 5th, 1858, except as otherwise provided by the Ordinance approved February 28th, 1861. This last Ordinance merely abolished the office of Commissioners for opening streets, and conferred their powers upon the Appeal Tax Court. The exception, therefore, need not now be more particularly noticed. By the Revised Ordinance of 1858, No. 15, sec. 7, it is provided, "That in every case where it shall be necessary to effect the object proposed, that a part only of a house and lot, or of a lot, shall be taken and used, or destroyed, and the owner thereof shall claim to be compensated for the whole, the Commissioners shall ascertain the full value thereof, as if the whole lot and improvements were necessary to be taken and used for such proposed object." It then provides for the payment to the owner of the whole of such valuation, and for the sale of the residue of the lot not necessary to be taken and used for the street; and the amount which is derived from such sale is appropriated to the payment of the expense of the improvement, thereby diminishing to that extent the cost of the work assessed upon the parties benefited.

It is contended that this provision of the Ordinance is illegal and invalid, because it is taking the property of a citizen, when it is not required, for public use, contrary to the Constitution and laws of the State. This provision did

not originate with the Ordinance of 1858; it is found in
that of the 9th of March 1841, passed to carry into effect
the powers granted to the Mayor and City Council by the
Act of 1838, ch. 226. The same provision is found in
every Ordinance of the city passed since that time, in rela-
tion to this subject, and which have been repeatedly before
this Court for examination and construction, and repeatedly
declared to be a valid exercise of the power delegated by the
Act of 1838, ch. 226. See *Alexander & Wilson, vs. The
Mayor & C. C. of Balt.*, 5 *Gill*, 383. *Richardson vs. Same,*
8 *Gill*, 433. *The Methodist P. Church vs. Same*, 6 *Gill*,
391. *Stewart vs. Same*, 7 *Md. Rep.*, 500. *State, at the
relation of McClellan, vs. Graves*, 19 *Md. Rep.*, 351. It is
true that the particular objection now made, does not ap-
pear to have been suggested in any of those cases, but the
judgment of the Court pronounced in some of them, neces-
sarily covered it, and would be inconsistent with the posi-
tion here taken by the appellees. In the face of these re-
peated decisions, we should feel very great hesitation in
pronouncing unconstitutional and void a provision of an
Ordinance appearing to have had so repeatedly the sanction
of the Appellate Court, and which has been in operation for
twenty-four years.

But, looking at this as a new question, wholly uninflu-
enced by any previous decision, we should have little hesi-
tation in saying that this provision of the Ordinance is free
from the objection urged. It does not sanction the taking
of any property from the owner, without his consent, not
necessary for the public use. If more land is taken, in any
case, than is required for the bed of the street, it is always
done with the consent of the owner, to whom the option is
given of retaining the fragment of a lot when part is taken
by the city, or of claiming compensation for the whole, and
allowing the part not taken to be sold for the benefit of the
parties charged with the cost of the improvement. They
are not injured by the proceeding, for there can be no more
certain mode of ascertaining the value of the part of a lot

taken, than by selling at public auction the part that is left, and deducting from the value of the whole the sum realized by the sale. In the matter of *Albany Street*, the Supreme Court of New York expressed the opinion that such a provision would be free from objection. 11 *Wend.*, 151. Properly construed, the Ordinance does no more than to prescribe a mode by which the true value of property taken for public use may be ascertained, and the parties benefited assessed therefor. In the opinion of this Court, the Ordinance before us is not obnoxious to the objection made by the appellees in the first point of their brief.

We are also of opinion that the objection to the Ordinance stated by the bill, and presented in the brief of the appellees in their third point, is not well founded. This point is, that the Ordinance is invalid, because it did not provide for an appeal to the Superior Court from the decision of the Appeal Tax Court. By the terms of the Ordinance of 1858, which govern the case before us, the appeal is directed to be made to the City Court of Baltimore. The appellees insist, that by the Constitution and laws, the right of appeal to the Superior Court is granted, at the option of the party appealing; and that it is a fatal objection to the Ordinance, that it deprives a party aggrieved of this option, and limits his appeal to the Criminal Court alone.

At the time of the adoption of the Constitution of 1851, the exclusive jurisdiction over such appeals was in the City Court; by that Constitution the same jurisdiction was conferred upon the Criminal Court. It was not given to the Superior Court by the 11th section of the 4th Article. The general words there used must be construed as defining the original jurisdiction of the Superior Court, and do not refer to appeals from inferior tribunals, or in street cases; they are regulated by statute. By the Act of 1853, ch. 451, the Superior Court was authorized to exercise jurisdiction over appeals in street cases concurrently with the Criminal Court. We see no reason why that Act was not a constitutional exercise of legislative power. But that inquiry is not in-

volved in the present case. Conceding that Act to be con-stitutional, it was still competent for the Mayor and City Council, in legislating on such cases, to provide for an appeal either to the Superior or Criminal Court, they having concurrent jurisdiction. Such Ordinances are passed in execution of the powers conferred by the Act of 1838, ch. 226, which simply requires, by its second section, that provision shall be made securing to the owner the right of trial by jury; this is fully accomplished, whether the appeal be to the Superior or the Criminal Court. It is eminently pro-per that the Ordinance should designate the Court to which such appeal will lie in any given case; otherwise the greatest difficulty and confusion might arise from conflicting decisions of different juries, in regard to the same subject matter of inquiry, if the various parties interested had the right of prosecuting an appeal, at their option, before one or the other Court. That such legislation by the city has not heretofore been objected to, will appear from the case of *Stewart vs. The Mayor & C. C. of Balto.*, 7 *Md. Rep.*, 500, in which this Court had before them the Ordinance of 1853, No. 58, approved June 8th, 1853, after the Act of 1853 went into effect, and in which parties were tied down to their appeal to the Criminal Court. But on this question we think the Code, vol. 2, Art. 4, sec. 837, is conclusive, and free from all doubt or difficulty. By that section, the power and option is plainly given to the Mayor and City Council, in providing for appeals, to direct that they shall be taken either to the Superior or the Criminal Court.

One more objection to the validity of this Ordinance was insisted on in the argument, and remains to be considered; this is fully set out in the bill, and very clearly stated in the second point of the appellees' brief. It arises upon the construction of the 4th and 5th sections. By the 4th section, it is directed that "in the settlement with Wm. W. McClellan, or Catharine M. Raborg, for any damages which may be awarded him or her for property condemned under the provisions of this Ordinance," certain sums shall be de-

ducted, before received by them, under Ordinance No. 59, approved October 21st, 1858; and also that one of the sums so deducted shall be paid over to A. Hoen & Co., or credited therefor upon any assessment that may be levied upon them under the Ordinance. By the 5th section, it is enacted and ordained that "the Ordinance shall not take effect" until certain things therein specified shall be done, and McClellan and Raborg, or their representatives, "have given their written assent to the provisions of the 4th section."

These provisions, it is said, render the Ordinance void, because it was not competent for the Mayor and City Council to delegate this legislative power over the subject, and make the Ordinance depend for its force and efficacy upon the will of others; and because it appears from these sections that the Ordinance was not passed on consideration of public necessity and convenience; but was the result of a bargain or contract between the Mayor and City Council and the parties, whose assent is required to give it effect and operation.

The decision of this point involves considerations of much interest and importance, and by no means free from difficulty; while on the one hand municipal corporations, having delegated to them a limited jurisdiction, and being entrusted with the power of dealing with the property and rights of the citizen, ought to be restrained within the strict limits of their authority, and when they transgress those limits, it is the duty of the Courts to declare their acts void, in so far as they have exceeded their powers; yet, on the other hand, where the exclusive jurisdiction and power to legislate upon a given subject, have been conferred by law upon such a corporation, every intendment and presumption ought to be made in support of their acts, and Courts of Justice should never pronounce them void, unless their nullity and invalidity are placed beyond reasonable doubt. The rules and principles governing Courts of Justice, when dealing with such subjects, are very clearly

expressed by Chief Justice SHAW, in his able opinion pronounced in the case of *Wellington, et al.*, 16 *Pick.*, 95, 96, 97. In that case the Court was dealing with an Act of the Legislature; but the rules of construction there laid down, are equally applicable to the legislative Acts of a municipal corporation, passed within the scope of their delegated powers.

The Ordinance before us, was passed in the exercise of the power of eminent domain, delegated to the corporation by the General Assembly, and defined in the Code, vol. 2, Art. 4, sec. 837. By that section, the power to lay out and open a street, "which, in their opinion, the public welfare or convenience may require," is clearly conferred; it is to be exercised for the public good, and only when, in the opinion of the Mayor and City Council, "*the public welfare and convenience require;*" to their discretion, alone, the law confides the decision of the question of the propriety of opening any street; their judgment upon that question is therefore final, and cannot be examined or reviewed by Courts of Justice. The subject is confided to their judgment and discretion, which they alone must exercise, and cannot delegate to others. If an Ordinance were brought before us, passed by the Mayor and City Council, manifestly not in the exercise of their discretion, looking to the public welfare alone, but based upon other considerations, as the result of a bargain with individuals interested in the work, or dependent for its efficacy upon their will, or upon matters wholly extraneous to the subject of legislation, and altogether unconnected with the question, whether the public convenience required the street to be opened, or the expediency of undertaking the work. If such a case should arise, this Court would not hesitate to say, both upon the plain words of the Code, and upon the highest grounds of public policy, that such an Ordinance would be null and void, notwithstanding it might profess on its face to be passed for the public convenience alone. In our opinion, that is not the case with the Ordinance now under consid-

eration. The bill does not charge that there was any fraud in procuring its passage, or that it was based upon any corrupt or dishonest bargain, between the Mayor and City Council and the parties named in the 4th and 5th sections.

The objection is founded upon the provisions contained in those sections, and the Ordinance must stand or fall, according to the construction of these provisions.

The 4th section does no more than provide the mode by which the damages that may be awarded to McClellan or Mrs. Raborg, shall be adjusted, retaining out of the amount so awarded, a sum previously received by them from the city under the Ordinance No. 59 of October 1858, which was an Ordinance providing for opening this same street, and which was afterwards repealed, after having been in part executed.

No valid objection can be made to this provision, no additional burden was thereby imposed upon any of the property holders. The arrangement is one founded in justice, and this Court is not at liberty to presume, that such an arrangement constituted an unfair or corrupt bargain.

The 5th section provides that the Ordinance shall not take effect until certain cases of *mandamus*, lately pending in the Court of Appeals, and removed thence by writ of error to the Supreme Court, shall have been dismissed, and other cases against the city, growing out of the repeal of the Ordinance of October 1858, shall have been released and abandoned; and further requires the assent of McClellan and Mrs. Raborg to the provisions of the 4th section, as a condition precedent to the Ordinance going into effect. This is not delegating to others, the discretion vested by law in the Mayor and City Council. A valid law may be passed, to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties. That was decided in the *Mayor & C. C. of Balto., vs. The Northern Central R. W. Co.,* 21 *Md. Rep.,* 93. The same principle applies to an Ordinance passed by a municipal corporation, provided the

subject matter of the Ordinance is within the legislative powers delegated to the corporation; and provided it does not appear that the contingent event is foreign to the subject matter of the Ordinance, and wholly unconnected with the consideration of the public convenience, upon which, alone, the Ordinance must be based.. The same observation will apply to the other contingencies mentioned in the 5th section. A reference to the cases of *mandamus* reported in 19 *Md. Rep.*, 351, will show the connection between them and the subject of the Ordinance; and the great importance of the provisions in the 4th and 5th sections, without which, much confusion and difficulty might result from the execution of the Ordinance. These provisions appear to us to be germane to the subject of the Ordinance, and as embracing items or elements which might properly enter into the consideration and decision of the question of public convenience, or the expediency of undertaking the contemplated improvement, and therefore, might properly constitute contingencies, upon which the Ordinance was to depend. Such would be the intendment and presumption of the law, even if the subjects embraced in these sections were less obviously and closely connected with the very question of the expediency of passing the Ordinance, than they appear to be.

We have said it is necessary to the validity of such an Ordinance, that it shall be passed only, upon consideration of the public good, and be based upon the judgment and decision of the Mayor and City Council, that the public convenience requires its passage.

By the 1st section it is adjudicated, in unqualified terms, that the public convenience requires the street to be opened. We see nothing in the other provisions to justify us in saying, that this is a mere colorable pretence, and that the Ordinance was passed upon any other ground or consideration, than that which the law prescribes, and which is left to the exclusive jursdiction and control of the Mayor and City Council.

These conclusions are the result of an examination of the authorities cited by the counsel in argument, all of which have been examined, but it is unnecessary to refer to them here.

As we are of opinion that the Ordinance is not invalid, for any of the reasons set forth in the bill of complaint, it becomes unnecessary for us to express any opinion upon the question of jurisdiction; conceding the jurisdiction to exist in equity, the appellees are not entitled to relief by injunction upon the allegations of their bill.

An order will be passed reversing the order of the Circuit Court, and dismissing the bill with costs to the appellant.

*Order reversed and bill dismissed.*