THE STATE, HENRY J. BARR, PROSECUTOR, v. THE MAYOR, &c., OF NEW BRUNSWICK AND THE PENNSYLVANIA RAILROAD COMPANY.

1. Under the acts of 1874 (*Pamph. L.*, p. 45) and 1893 (*Pamph. L.*, p. 157), when a railroad company presents to the common council of a city a petition offering certain terms if authority is given to change and alter streets, and such terms are accepted by the city, a contract is made between the company and the city within the meaning of the said acts.

2. The taking of land in such a case is the taking of it for a public use.

3. The fact that the company undertakes to pay the entire expense of the proceeding does not invalidate it. The city is authorized to make such an agreement in ease of the public burden.

4. In proceedings under the eightieth section of the city charter, a dwelling-house may be taken upon making due compensation.

5. In order to give common council jurisdiction to pass an ordinance, it need not appear in the minutes of its proceedings that the notice required by the city charter was given; it is sufficient if such notice was actually given, and proof *aliunde* is competent to show compliance with the charter in that respect.

6. The provision in the city charter requiring publication of an ordinance between its second and third readings, applies only where the ordinance involves the expenditure of public moneys, and not to a case where the ordinance permits a railroad company to expend its own money in making a change in streets.

On *certiorari* to review an ordinance of the common council of the city of New Brunswick.

Argued at June Term, 1895, before Justices VAN SYCKEL, MAGIE and LIPPINCOTT.

For the plaintiff, *Voorhees & Booraem.*

For the defendants, *James B. Vredenburgh.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The question presented in this case relates to the validity of an ordinance of the city of New Brunswick, entitled "An ordinance to vacate a portion of Somerset street and to open a new street in the place thereof, on the petition of the Pennsylvania Railroad Company," passed February 4th, 1895.

An act passed in 1874 (*Pamph. L.*, p. 45) authorizes city authorities to enter into contracts "with railroad companies, whereby said companies may relocate, change or elevate their railroads, and when necessary for that purpose, the city may have authority to change and alter street lines."

A supplement passed in 1893 (*Pamph. L.*, p. 157) extends the right of making such contracts for the opening of streets in the place of those vacated by such agreements.   *Gen. Stat.*, *pp.* 26, 89.

The prosecutor contended that in this case there was no contract between the city and the Pennsylvania Railroad Company, and that, therefore, these acts of 1874 and 1893 do not apply.

The railroad company presented a petition to the common council of the city, offering to donate a portion of the land and pay all the expenses of the proposed change in the street, and the common council accepted the proposition and passed the ordinance making the change.

This clearly constituted a contract within the meaning of these laws.

The second objection to the proceeding is that it does not appear that the ordinance was passed for the public good, and that it takes private property for private use.

That the right of eminent domain cannot be exercised for the purpose of taking private property for private use is true beyond controversy.

The only reason that it can be invoked in behalf of railroad companies is that it is unquestionable that the taking of lands for their purposes is regarded as taking it for a public use.

The case shows that there is reasonable ground for holding that the change to be effected by the ordinance in question is beneficial to the public.

That question has been passed upon by the common council of the city in the due exercise of its granted powers, and it will not be reversed by this court.

The fact that the railroad company agreed to pay all the expenses of the change in the street constitutes no legal objection to the proceedings.

The cases cited in support of this objection have no pertinency.

The legislature, by the acts referred to, expressly authorized railroad companies to contract with city authorities to make changes in streets for the advantage of the railroad as well as the public.

The right to contract necessarily implies that the railroads might assume obligations on their part to induce the city authorities to consent to alterations in streets.

The two parties could lawfully make such terms as they

could agree upon with reference to the expense incident to such changes.

Any provision by which members of the city council would derive a benefit personal to themselves would be vicious and fatal, but an agreement in ease of the public burden, consequent upon the passage of the ordinance, is authorized by the statute.

Section 3 of the ordinance provides that it shall go into effect at the expiration of ten days, provided the company shall file with the city attorney a bond in the sum of $25,000 for the performance of its promises.

In this respect there is no infirmity in the ordinance.

The city had a right to make the contract, and it was the duty of the city authorities to take reasonable and proper measures to secure performance on the part of the other contracting party. *Baltimore* v. *Clunet*, 23 *Md.* 449; 1 *Dill. Mun. Corp.* (*4th ed.*), § 309.

There is a dwelling-house upon the land of the prosecutor, which is taken by the opening of the new street, and it is claimed that there is no power to take a dwelling-house.

The charter of New Brunswick (*Pamph. L.* 1863, *p.* 379, § 80) gives the common council, whenever in its opinion the public good requires it, the power to lay out and open any street or highway in the city, to order any street or highway to be vacated, altered or widened, and to take and appropriate for such purposes any lands and real estate, upon making compensation to the owner or owners. *Sections* 101, 105.

The city having been granted these general powers over streets and highways, is not subject to the seventy-ninth section of the "Act concerning roads" as amended in 1893 (*Gen. Stat.*, *p.* 2838, § 167), which prohibits the taking of a dwelling-house.

There is no restriction upon the power of the city to vacate and lay out streets, and it is manifest that if a dwelling-house was an insurmountable barrier to the opening of streets in cities, the power granted would be very inadequate indeed to the public necessities.

It is claimed, however, that by implication there is an absence of power in the city to lay out a street which will take a dwelling.

Section 101 of the city charter provides that the provision of the charter in relation to laying out, altering or widening any street shall be construed to extend to and embrace the removal of any building or part of a building erected within the lines of any street laid out under section 105 of the charter. The one hundred and fifth section applies wholly to streets whose lines have not been distinctly marked and cannot be clearly ascertained, and has no relation to the eightieth section of the charter, under which the proceedings in this case were taken.

It is contended that, as the charter provides for the removal of buildings under section 105, it by implication excludes the right to remove them when proceeding under the eightieth section.

Granting this does not aid the prosecutor. It relates only to the removal of buildings. Without such a provision in the charter there would not in any case be a right to remove buildings from lands taken for streets; the city would be obliged to compensate the owner for the value of the building as well as the land upon which it is erected. The legislature has deemed it proper to give the right to remove a building under section 101, but that in nowise affects the power of the city to take land and buildings by giving the owner the just and reasonable compensation he is entitled to when the proceedings are under the eightieth section.

The eighty-sixth section provides for the assessment of damages to landowners. If the owner of a dwelling can lawfully refuse to permit the commissioners of assessment to enter it, in order to make their valuation, they will make their appraisement upon such view as they can take. The statute does not contemplate that the owner will refuse.

The only remaining question is whether the proceedings below must be set aside for the alleged reason that the ordinance was not published before it was passed, in the manner required by the city charter.

The infirmity pointed out in this respect is that it was not published between its second and third readings, as the twenty-seventh section of the city charter directs.

Failure to make such publication in *Athletic Association* v. *New Brunswick*, 26 *Vroom* 279, was held to be fatal to the proceedings there certified, but in that case it was conceded that there had been no publication. This case was argued before this court in June, 1895, at which term the counsel of the defendants handed up to the court affidavits showing that the ordinance had been duly published between the second and third readings. These affidavits were taken *ex parte*, and the court, therefore, in order to decide the case upon its merits, granted a rule permitting the parties to take affidavits to show how publication had been made.

Under this rule, testimony was taken on due notice, and the case was reargued by the counsel of the respective parties at the November term. The testimony so taken shows, beyond controversy, that publication was duly made.

It is urged on the part of the prosecutor that the publication must not only be made, but it must appear as a jurisdictional fact that proof of publication was laid before the common council before it could pass the ordinance. This position is not well taken.

The fact of publication gives jurisdiction; the absence of publication constitutes the want of jurisdiction. The purpose for which publication is required is to give those interested an opportunity to be heard. That object is accomplished by the actual giving of the notice. All the rights which the prosecutor could legally exercise were afforded to him by the notice, and he has no ground of complaint. It is not essential to jurisdiction in the council that it shall appear that it decided that notice was given in due form.

In *State* v. *Elizabeth*, 1 *Vroom* 176, the court said that the jurisdictional facts must appear on the face of the proceedings or otherwise, and in *State* v. *Elizabeth*, 1 *Id.* 365, it was expressly held that, in order to give the city council jurisdiction, it need not appear by its minutes that it had appointed

a day to hear persons who objected to an improvement; it was sufficient if such notice of hearing was actually given.

This rule governs the case in hand; it need not appear in the minutes of the proceedings of council that publication was made, if it be shown *aliunde* that publication in fact was made.

Every step necessary to be taken for the passage of the ordinance in legal form has been taken.

Nothing more could be done if the proceedings were vacated and reinstated. A work which is designed to promote the safety of travel on the streets of the city, as well as in the cars of the railroad company, should not be arrested and delayed by an objection purely technical, and by which no injury whatever has been done to the prosecutor.

As the case is now presented, there appears to have been a strict compliance with the city charter.

Aside from this, the city charter requires publication between the second and third readings only where the ordinance involves the expenditure of money. This means the expenditure of the public funds of the city, and its purpose is to give notice to taxpayers that they may, if so disposed, resist the passage of an ordinance which will cast a burden upon them. In this case no money was to be expended by the city. The ordinance did not contemplate or provide for the expenditure of any money by the city. The entire expenditure of money under the ordinance was required to be made by the Pennsylvania Railroad Company. The ordinance was, in substance and effect, a permit to the Pennsylvania Railroad Company to make, at its own cost and expense, a change in the streets of the city in the manner therein specified. It did not, therefore, involve the expenditure of money by the city, and is not within the meaning and spirit of the twenty-seventh section of the city charter.

Upon this question the contention of the prosecutor is without merit.

The proceedings certified should be affirmed, with costs.