THE MAYOR, &c. OF BALTIMORE, *vs.* MOORE & JOHNSON. JUNE.

APPEAL from *Baltimore* county court. *Assumpsit* for money due for paving taxes, imposed upon the property of

have no power to tax any particular part of the city, for paving the streets, lanes and alleys, in such part, unless such paving is for the benefit of such part especially.

If the corporation, in the preamble to an ordinance to provide for the pavement of streets, states the object to be one of general benefit to the city, they cannot in the same ordinance tax exclusively the particular part of the city in which the streets are located.

If such an ordinance is passed without its stating what the object of the pavement is, the legal presumption is, that it is the especial benefit of the part of the city where the streets are situated.

1825.

The Mayor &c
vs
Moore & Johnson

the defendants, (the appellees.) They pleaded *non as-sumpsit*. At the trial the plaintiffs, (now appellants,) gave in evidence an act of assembly of this state, passed at November session 1796, *ch.* 68, entitled, "An act to erect *Baltimore*-town, in *Baltimore* county, into a city, and to incorporate the inhabitants thereof," and also another act of the general assembly aforesaid, passed at November session 1797, *ch.* 54, entitled, "A supplement to the act, entitled, An act to erect *Baltimore*-town, in *Baltimore* county, into a city, and to incorporate the inhabitants thereof." And also the following ordinances of the mayor and city council of *Baltimore*, to wit; "An ordinance, entitled, An ordinance to appoint city commissioners, and prescribing their duties; an ordinance, entitled, An ordinance directing the paving of a part of *Dulany*-street, in the city of *Baltimore;* and an ordinance, entitled, An ordinance for paving *Wilkes'*-street, *Washington*-street, *Castle*-alley, and *County*-street, within certain distances, and for other purposes, so as more effectually to preserve the navigation." And the plaintiffs further gave in evidence, certain paving tax warrants, signed *Henry Stouffer, James Martin*, and *Nathaniel Hynson;* the city commissioners for the year 1817, and approved by *George Stiles*, Esq. the mayor of the city of *Baltimore* for the year last aforesaid. And also gave in evidence, that the said paper writings are the warrants issued by the city commissioners, under the ordinances herein before mentioned. And further gave in evidence, that at the time of the passing the said ordinances, the said *Philip Moore*, one of the defendants, was, and ever since hath been seized in fee of one undivided moiety of certain lots of ground in the said warrants mentioned, which moiety had belonged to his deceased wife, as one of the heirs of *William Fell*, who was former owner, and died seized in fee of the whole of said lots; and that the said *Thomas Johnson*, the other defendant, at the time of the passing the ordinance aforesaid, did hold, and ever since hath held, as tenant by the courtesy, the other undivided moiety of the said lots, in right of his deceased wife, who was the other heir at law of said *Fell;* and that the amount of the said paving taxes, so charged upon the said lots of ground, so held by the said defendants, are as follow, to wit: On *Dulany*-street $3500 28, on *Wilkes'*-street from *Market*-street to *Wash-*

ington-street, $909 56, on *Washington*-street $116 55, and on *Wilkes'*-street from *Washington*-street to *County*-street, $415 80. And the plaintiffs further gave in evidence, that the city commissioners, on the 26th day of June 1817, contracted for the paving *Dulany*-street between *Bond*-street and *Castle*-alley, and for placing kirb stones and flag or stepping stones thereon; and that on the 14th day of April 1817, they contracted for the paving of *Wilkes'*-street between *Market*-street and *Washington*-street; and placing kirb stones thereon; and also, that on the 21st day of July 1817, they contracted for the paving of *Washington*-street between *Fleet*-street and the north side of *Wilkes'*-street, and placing kirb and flag stones thereon; and also, that on the 26th October 1817, they contracted for the paving of *Wilkes'*-street from *Washington* to *County*-street, and placing kirb and flag stones thereon; all which contracts were made in the name and on behalf of the mayor and city council of *Baltimore*. And further gave in evidence, that *Dulany*-street from *Bond*-street, eastward to *Market*-street, was paved in the fall of the year 1817, for the paving of which part there is no charge or claim against the defendants, they having no property or lots on said part; that the paving of the residue of said street under said contract, was commenced in April 1818, and finished in the fall of that year; that the paving of *Wilkes'*-street between *Market* and *Washington*-streets, was begun and finished in the summer and fall of 1817; and that the paving of the other parts of the streets in said contracts mentioned, were begun in April or May 1818, and finished in that year; but that the same had been, in the year 1817, dug down and filled up in different parts, as the unevenness of the ground rendered necessary, preparatory to being paved under the said contracts. And the plaintiffs further gave in evidence, that the city commissioners caused that part of *Castle*-alley, mentioned in the ordinance last recited, to be paved according to said ordinance; and that the part of *County*-street, mentioned in the said ordinance was, at the time of the making the same, a small distance, not exceeding a hundred yards, out of the then limits of the city of *Baltimore*; and that before the passing of the ordinance aforesaid for paving *Dulany*-street, that part of said street, from *Castle*-alley eastward to the old city line, had been gravelled and put in good order by

and at the expense of the *Baltimore* and *Havre-de-Grace* turnpike road company. The defendants gave in evidence the act of assembly of 1791, *ch.* 59; the act of 1816, *ch.* 218; and of 1817, *ch.* 148. And also gave evidence, that the mayor and city council of *Baltimore* have not by themselves, the city commissioners, or other agents, contracted for the paving of any other street, part of street or place directed by the said ordinances, other than those mentioned in the aforesaid contracts, and that the matters and work directed to be done by the said ordinances have not been otherwise or further executed than as set forth in said contracts, and herein before stated. And also gave evidence, that the ancient eastern boundary line of the city of *Baltimore*, called in the aforesaid ordinance the *Old City Line*, crosses *Dulany*-street about 200 feet eastward of *Castle*-alley, that said street has not been paved from said alley eastward to the said old city line. And also gave evidence, that the description or designation of persons in the said several warrants, as "*Fell's* heirs" or "*Fell's* h'rs." is meant and intended to designate and describe the heirs of the said *William Fell*, deceased, who was the owner, and died seized of the several lots of ground so designated in the said warrants; and that the said deceased wife of the said *Johnson*, mentioned in the plaintiffs' evidence, died intestate, leaving a son *William Fell Johnson*, and a daughter, *Ann Johnson*, her heirs at law, to whom her moiety in fee of said lots descended, and who are seized of the same in representation of their mother, as heirs of the said *William Fell*, and that they reside in *Baltimore* county. And they further offered evidence, that the several alterations, from the original manuscript of the said warrants, in the names or description of persons therein charged with the paving taxes aforesaid, by inserting in a different handwriting from the said originals, the names or words "*P. Moore* for *Fell's* heirs," "*Moore* and *Johnson* for *Fell's* heirs," whether connectedly or separately used and applied, were so written, altered and made, by the authority of the city commissioners at the time being, and done after the institution of this suit at the term previous to the trial thereof. And they further offered evidence, that the said city commissioners never did make return, under their hands and seals, or otherwise, to the register of the city, a certificate or other writing, of the pitching, levelling, or

grading of the said streets, or any of them, or cause the same to be done, and that the said several warrants were issued, and the paving aforesaid done, without the consent of the proprietors of a majority of the ground fronting on the said streets, or either of them, or the consent of the majority of the proprietors of ground fronting thereon, or on either of them; and that the said charge for paving said streets is made at the rate of nine cents for every square foot of pavement in said streets, in front of the lots or ground of individuals thereon, except the parts allotted for footways, which are paved at the expense of the owners of the lots fronting thereon, at what the work and materials may cost. The defendants then prayed the direction of the court to the jury, that the plaintiffs were not entitled to recover; which direction the court [*Hanson* and *Ward*, A. J.] gave. The plaintiffs excepted, and the verdict and judgment being against them, they appealed to this court.

The cause was argued at the last June term, before BUCHANAN, Ch. J. EARLE, and MARTIN, J.

*Taney* and *Scott*, for the Appellants, contended—1. That the plaintiffs had the right to impose the taxes stated in the declaration and bill of exceptions.

2. That that right had been properly exercised.

3. That the action was properly brought, and that the plaintiffs were entitled to recover.

On the *first* and *second* points, they referred to the acts of assembly of 1796, *ch.* 68, and 1797, *ch.* 54, *s.* 2, and the several ordinances passed by the city council of *Baltimore* on the subject of paving streets, &c. *Mayor of London vs. Sory*, Carthew, 92. 6 *Bac. Ab.* tit. Statute, 381, 382, 384. *Fisher vs. Blight*, 2 *Cranch*, 386, 399. *Rex vs. Loxdale*, 1 *Burr.* 447. *Church vs. Crocker*, 3 *Mass. Rep.* 21. 1 *Bac. Ab.* tit. *By Laws*, 544. *Rex vs. Spencer*, 3 *Burr.* 1837. *Martin vs. Mansfield*, 3 *Mass. Rep.* 419. *M'Culloh vs. Maryland*, 4 *Wheat.* 316.

On the *third* point, they referred to 1 *Esp. Dig.* 6, 7. 5 *Mass. Rep.* 325. *Tilden vs. Metcalf*, 2 *Day's Rep.* 259. *Beatty vs. Marine Insurance Company*, 2 *Johns. Rep.* 109.

*Harper*, *R. Johnson*, and *Howard*, contended, 1. The action had not been rightfully conceived.

2. The right to lay the tax was a special authority, and

the corporation had no power to delegate the authority to the city commissioners.

3. The paving warrants being altered after the institution of this action, was fatal to the plaintiffs.

4. The warrant is made the contract.

5. The plaintiffs had no right to recover because the work had not been done.

On the *first* point they referred to the act of 1796, *ch.* 68, *s.* 10. 1 *Chitty's Plead.* 339.

On the *second*, to *Rex vs. Spencer,* 3 *Burr.* 1837. *Rex vs. Cutbush,* 4 *Burr.* 2204. *The King vs. Ginever,* 6 *T. R.* 732. *Rex vs. Croke,* 1 *Cowp.* 26.

*Curia adv. vult.*

BUCHANAN, Ch. J. at this term, delivered the judgment of the court. The decision of this case involves the construction of the second section of the act of 1797, *ch.* 54, a supplement to the act incorporating the city of *Baltimore.* That section of the act, after conferring upon the corporation full power and authority to enact and pass all ordinances necessary for paving and keeping in repair the streets, lanes and alleys, in the city of *Baltimore,* gives the further power "to tax any particular part or district of the city, for paving the streets, lanes or alleys therein, or for sinking wells, or erecting pumps, which may appear for the benefit of such particular part or district." The question arises upon this latter clause, which is, whether authority is given to the corporation to tax any particular part or district of the city for paving the streets, lanes or alleys therein, unless such paving shall appear to be for the benefit of that particular part or district; or whether the word "which" relates to wells or pumps only? And we think it extends as well to the paving the streets, lanes and alleys, as to the sinking of wells and erecting pumps. A general and unlimited paving power is before given to the corporation, and it is difficult to suppose that the legislature meant to authorise the imposition of a special tax, on any particular part of the city, for any paving which should not be, or appear to be, for the benefit of such part. Such a power might be attended with evil consequences, and, in many cases, work very great injustice. Where a street is d[i]r[e]cted to be pav[e]d for the benefit of a particular part or district of the city, it is perhaps proper that

1825.

The Mayor &c
vs
Moore & Johnson

such part or district should be taxed for the purpose; but where the paving is for the general benefit, and not of the immediate district in which the street lies, it ought to be paid for out of the general fund; and there would be much injustice in imposing a special tax on the particular district for that object, which could not have been the intention of the legislature. And where a law is of doubtful construction, that interpretation should be given it, so far as it can be done, which is pregnant with the least mischief. This view of the second section of the supplement to the charter of the city of *Baltimore*, brings us to an examination of the two ordinances of the 10th of April 1817, on which this suit is founded. Each of these ordinances has a preamble setting out the purpose for which it was passed. The first, that for paving a part of *Dulany*-street, after reciting in the preamble that it is a public highway leading into the city, which ought to be kept in the most perfect state of repair, and good condition, but has become in many places dangerous to travellers passing in carriages after dark, and that there is an imperious necessity for having it paved, proceeds to direct the city commissioners to pave it, in order to remove these inconveniencies to travellers, and imposes a tax on that particular district of the city for that purpose. The title of the other is, "An ordinance for paving *Wilkes'*-street, *Washington*-street, *Castle*-alley and *County*-street, within certain distances, and for other purposes, so as more effectually to preserve the navigation." The preamble states the object to be the protection of the navigation from injury by the wash coming down the hills, and also to remove the injury and inconvenience experienced by many individuals from the same cause, and that no alternative presents itself, but the paving the streets mentioned, for which purpose a tax is imposed on the particular districts in which they lie.

If these ordinances were without preambles, though the paving directed to be done is no where said to be for the benefit of the particular parts or districts in which the streets lie, yet such an exercise of the special taxing power, in the absence of any thing to the contrary, would be taken to have been in pursuance of the authority conferred by the charter. The city council would be presumed not to have exceeded their powers, but to have imposed the tax, for that purpose only for which the charter authorises

1825.

The Mayor &c
vs
Moore & Johnson

it to be imposed; and with no other guide the mind would come to the conclusion, that it did appear to them to be for the benefit of those particular districts, and it is not necessary that it should be expressly so stated.

But it is a settled principle, that in the exposition of statutes, every part should be taken into consideration, in order to arrive at the intention of the legislature, which, when it plainly appears, ought to prevail. It is also a general rule, that the preamble of a statute is a key to its construction, and should be resorted to, to unlock the mind of the makers, but not to restrain the general words of an enacting clause, which, understood according to their genuine and natural import, clearly and plainly express the meaning of the legislature. And the same general rules of construction are equally applicable to the ordinances of a corporation.

In the enacting clauses alone, of the ordinances under consideration, not a word is to be found expressive of the opinion of the makers, that the paving directed would be, or appeared to them to be, for the benefit of the particular districts, they only direct the streets to be paved, and impose the tax for that purpose. And looking to these clauses alone, the mind is left to labour to discover why these particular districts are so taxed, and to conjecture that the paving appeared to the corporation to be for their benefit; but if we apply the preamble as a key, the mind of the makers is at once opened, and the intention clearly disclosed, by which it plainly appears, that the paving was meant in one case for the benefit of travellers, and the improvement of a public highway leading into the city, and in the other, to preserve the navigation; both of which objects were matters of general concern, and it was not considered to be for the benefit of either particular district, or intended for that purpose, and nothing is left to construction. The keeping in repair a public highway leading to the city, which is declared by the preamble to be the object of one of the ordinances in question, and the preservation of the navigation, the declared object of the other, are clearly matters of public and general concern, and in the latter case of peculiar benefit to the parts or districts of the city contiguous to the harbour; and there would be much hardship in taxing any particular part or district of the city for doing what is for the benefit of

another part, or for the benefit of the whole, the burden of which should be borne by the whole. The taxing the particular districts, therefore, in this case, not for their benefit, but for the benefit and convenience of the whole city, was unauthorised, and the ordinances so far nugatory and void.

JUDGMENT AFFIRMED.