*THE STATE OF MARYLAND, on the Relation of  **85**
The Mayor and City Council of Baltimore *v.*
JOHN W. KIRKLEY, Thomas C. Basshor,
James Smith and Thomas B. Burch.

*Decided June 12th, 1869.*

Constitutional law ; power of Mayor and City Council ; of Convention of both branches ; appointments to office. Acts and Ordinances contingent upon future acts ; construction of Ordinances.

Ordinance No. 58, of the Mayor, etc., of Baltimore, approved the 25th of September, 1865, providing for building of a new City Hall," was by its own provision inoperative until its ninth section was confirmed and ratified by the General Assembly. On the 29th of January, 1866, the General Assembly passed an Act, entitled "an Act authorizing the Mayor, etc., of Baltimore to build a new City Hall," in which there was neither in the title or the body of the law, any reference to Ord. No. 58, and no words of confirmation or ratification; the provisions of the law in every material respect differed from those of the ninth section of the Ordinance. At the January session of the City Council in 1867, certain persons were nominated by the Mayor and confirmed by the Council, as Commissioners to constitute "The Building Committee of the new City Hall," accepted the appointment and entered upon their duties accordingly, with the Mayor as president of the Committee. *Held:*

That the Act of Assembly was not a confirmation and ratification of the ninth section of the Ordinance, but, an independent grant of power, to be exercised by future conformable legislation on the part of the City Corporation.                                                   p. 106

The ninth section of the Ordinance, not having been ratified, as required by the eleventh section, the appointment of Commissioners by the Mayor to constitute "The Building Committee of the new City Hall," was unauthorized and nugatory, and conferred upon the appointees no authority whatever.                               pp. 106-107

*Mandamus* was the proper remedy to restrain the Commissioners, who had assumed to act without lawful authority, in discharge of the duties of their supposed office. (*aa*)                            p. 109

An office created by the Mayor and City Council, or an officer ille-

(*aa*) See *State v. Baltimore County, post,* p. 517, note (*f*).

gally appointed, cannot be legalized by the acquiescence of the municipal corporation.                                                                 p. 109

The two branches of the City Council of Baltimore have power to pass ordinances regulating the manner of appointing to office, and if no such ordinances be passed, the Mayor nominates, and with the advice and consent of the two branches, appoints all officers under the corporation, whose appointment is not otherwise provided for by the Charter. (a)                                                  p. 107

Every ordinance before it becomes a law of the Mayor and City Council of Baltimore, must be passed by each branch and approved by the Mayor, or passed over his veto.                                      p. 107

A Convention of the two branches can neither pass or repeal an ordinance. (b)                                                                  p. 107

**86**    *The same general rules of construction which govern the interpretation of Acts of the Legislature, are equally applicable to the legislative acts of a municipal corporation.                         p. 103

A municipal corporation may pass an ordinance within the limits of its delegated powers, contingent as to its operation and effect, on the existence or occurrence of facts germane to its subject matter. (bb)
                                                                         p. 102

A law which by its own terms, is to have no effect until the happening of a future contingent event, cannot be made effective *before* the event happens, by any Acts or series of supplements passed upon the assumption that the event has happened and that the law is in force. All such Acts, instead of possessing any curative powers, merely multiply errors. (b)                                                          p. 109

Parties dealing with the agents or officers of a municipal corporation, must *at their peril* take notice of the limits of the powers both of the municipality and of those who assume to act as its agents or officers. (c)                                                                   p. 110

Appeal from the Superior Court of Baltimore City.

By Ord. No. 58, of the Mayor and City Council of Baltimore, approved September 25th, 1865, entitled " an Ordinance to provide for the building of a new City Hall," it was enacted that the Mayor should appoint, subject to the approval of the Council in convention, four persons, whose qualifications were prescribed, who, together with the Mayor, should constitute

---

(a)   See *Hooper v. New*, 85 Md. 565; *Hooper v. Creager*, 84 Md. 195.

(b)   Cf. *Zeiler v. Central Railway*, 84 Md. 304.

As to the quorum and rules of procedure of the City Council of Baltimore, see *Heiskell v. Baltimore*, 65 Md. 125.

(bb)  See *Baltimore v. Clunet*, 23 Md. 450, note (d).

(c)   See *Baltimore v. Eschbach*, 18 Md. 276; *Baltimore v. Musgrave*, 48 Md. 283.

the Building Committee of the new City Hall, whose duty it should be to superintend its erection. The Ordinance, besides a variety of details as to how the work should be done, etc., provided further by its ninth section, in order to meet the required disbursements, that the Commissioners of Finance should issue $500,000, of City Bonds, or so much thereof as should be necessary, from time to time, bearing interest at the rate of six per cent. per annum, payable semi-annually, and redeemable at the pleasure of the corporation, at any time after the 1st of July, 1893, the proceeds of said bonds, as disposed of, to constitute a fund in the hands of the City Register, to be applied to the erection of the new City Hall. · By sec. 11, of the same Ordinance, it was enacted that· the Ordinance should have no effect, until the ninth section should be ratified and *confirmed by the General Assembly of Maryland. On **87** the 29th of January, 1866, the General Assembly passed an Act, entitled " an Act authorizing the Mayor and City Council of Baltimore to build a new City Hall."

At the January session of the City Council, in 1867, the appellees, John W. Kirkley, Thomas C. Basshor, James Smith and Thomas B. Burch, were nominated by the Mayor and confirmed by the Council, as Commissioners to constitute the Building Committee of the new City Hall, accepted the appointment and entered upon their duties accordingly, with the Mayor as president of the committee. By sec. 1 of Ord. No. 48, passed at the same session, approved July 23rd, 1867, entitled " an Ordinance supplementary to an Ordinance entitled 'an Ordinance to provide for the building of a new City Hall,' approved the 25th of September, 1865," the interest upon the bonds, directed to be issued by the ninth section of the original Ordinance, was required to be paid quarterly, instead of semi-annually, and said bonds were made redeemable at any time after the 1st of July, 1882, instead of 1893, and in addition to the amount of bonds authorized to be issued by the former Ordinance, the Commissioners of Finance were empowered, if necessary, to issue another $100,000, of City Bonds, upon the same terms. A tax of two cents on every hundred dollars of assessable property was also levied for the year 1868, for the purposes of a sinking fund, and so much of the ninth section of the original Ordinance, as might conflict with the pro-

visions of the later and supplementary Ordinance, was re-pealed.

The question in the present case arises upon a petition filed December 12th, 1867, in the name of the State, on the relation of the Mayor and City Council of Baltimore, in the Superior Court of Baltimore City, impeaching the legality of the appointment of the appellees as said Building Committee, and of their official acts, and praying for a writ of *mandamus* to compel them to surrender to the relators the building plans and specifications for the new City Hall, in their possession, **88** *and to enjoin them from acting as the Building Committee and from doing any act in official recognition of the contracts entered into by them.

The petition recited the provisions of the Ordinance of 1865, the adoption of plans and specifications for the building by the Mayor and City Council, the appointment of the appellees as the Building Committee, and their assumption to act as such, particularly by taking possession of the plans and specifications referred to, by entering into contracts with certain parties named, for work and materials, and by giving orders upon the City Register for the payment of money, in pursuance of such contracts. It alleged that section 9, of the Ordinance of 1865, had never been confirmed or ratified directly or indirectly by the General Assembly of Maryland, and that section 11, of said Ordinance had never been modified or repealed ; that consequently said Ordinance never went into effect, and the appointment of the appellees as the Building Committee, and all the acts done by them by virtue of such appointment, were null and void.

The petition also charged the refusal (upon demand) of the appellees to deliver to the relator the plans and specifications referred to, their continued assumption to act as the Building Committee of the new City Hall, and that the petitioner was remediless save by process of *mandamus*.

Under a rule to appear and show cause, the appellees appeared by counsel and filed their answer on the 6th of January, 1868.

The answer admitted that the plans and specifications referred to were in the possession of the appellees, but only in their official capacity as the Building Committee, and their

refusal to surrender them, not as a denial of the relator's property therein generally, but simply as an assertion of their own right to retain and use them in the discharge of their official obligations ; also admitted the passage of Ord. No. 58, of 1865, and the provisions of sections 9 and 11, but denied that said Ordinance had never been ratified *or **89** confirmed ; and averred on the contrary that the Act of Assembly, January 29, 1866, was substantially and for all legal purposes a ratification and confirmation of said Ordinance, so that immediately from and after the passage of said Act, said Ordinance became operative. The answer further admitted that section 11 of the Ordinance of 1865, had never been in terms repealed, but averred that the restrictive effect of said section was destroyed by the Act of Assembly, and by the proceedings and acts of the relator since its passage, and that the appointment of the appellees as the Building Committee in 1867, was a removal of the restriction of section 11, and operated to make said Ordinance effective and binding, particularly in favor of third parties dealing with the committee in good faith, and within the scope of its powers.

The answer also admitted that contracts had been made by the committee for work and materials, and averred that such contracts were made in strict conformity with the requirements of the Ordinance, without bias, partiality or unfairness, especially without political or partisan preference, and that they were made not only fairly and impartially, but carefully, economically and prudently, and that in every case sufficient bond was exacted from the contractors for the performance of their contracts.

The answer recited the provisions of the supplementary Ord. No. 48, approved July 23rd, 1867, and averred that such Ordinance effectually confirmed the prior Ordinance, if it needed confirmation, and re-enacted it, if it needed re-enactment, doing away with the restrictive effect of section 11 ; that the passage of said supplementary Ordinance after the appointment of the committee, and after they had entered upon their duties, with the knowledge and approbation of the relator, was in itself a confirmation of such appointment, and of the acts of the committee ; and that the City Solicitor so officially advised the relator so late as November 11, 1867.

**90**      *The answer averred that by the issue·and negotiation of bonds by the City Commissioners of Finance, and the payment by the City Register of $26,000 upon certificates of the committee for work and materials under the contracts referred to, and by allowing the contractors to go on furnishing labor and materials, and entering into sub-contracts for the same, the relator had further recognized and adopted the official acts, and confirmed the official authority of the appellees, and further conceded and established the validity of the Ordinances in question.

The cause having been heard, the court (Dobbin, J.) filed an order refusing the _mandamus_ and dismissing the petition. From this order the present appeal was taken.

The cause was argued before Bartol, C. J., Stewart, Brent, Miller and Robinson, JJ.

_Robert D. Morrison_ and _Wm. Henry Norris_, for the appellant: · It has been ruled by this court in _Baltimore v. Clunet_, 23 Md. 469, that it is competent for an Ordinance to be passed, contingent as to ·its operation, on the existence or occurrence of facts germane to the subject-matter of the Ordinance, "and the Ordinance must stand or fall, according to the construction of those provisions." The Ordinances of the Mayor and City Council of Baltimore, are to be construed and interpreted by the same rules and principles which guide the courts in the exposition of laws by the General Assembly. For the ascertainment of those rules and principles, see Dwarris on Statutes, 9 Law Lib. 48; _Alexander v. Worthington_, 5 Md. 485 ; _Regina v. St. Leonard_, 68 E. C. L. 342 ; _King v. Mabe_, 30 E. C. L. 146 ; _Green v. Wood_, 53 E. C. L. 185-6 ; _Lawton v. Hickman_, 58 E. C. L. 590.

Let the principles of construction as thus ascertained be applied to the Ordinance of the Mayor and City Council of **91** *Baltimore, passed on the 25th of September, 1865, premising that prior to this Ordinance no such office existed as the "Building Committee of the new City Hall." That Ordinance created the office. It only exists if that Ordinance exists and is operative. As under sec. 25, Art. 4, Code of Pub. Local Laws, the right was given to the City Council to pre-

scribe by Ordinance for the appointment of officers ; as this office was created by this Ordinance, and the Ordinance was to have *no* effect, unless section 9 was ratified by the General Assembly, if the Ordinance has not been ratified, no Ordinance exists creating the office or designating the mode of appointment.

The question then is, has sec. 9 of the Ordinance of the 25th of September, 1865, been " confirmed and ratified by the General Assembly of Maryland," as required by sec. 11 of the Ordinance.

The very same presumption that prevails in relation to all parliamentary statutes is alike applicable to Ordinances ; that is, that the makers used the words under the import usual in legislation, or which has been fixed by judicial decision. *Kiersted v. State,* 1 G. & J. 231 ; *McKee v. McKee,* 17 Md. 352.

By a long legislative practice, to " confirm and ratify " Ordinances, means to sanction them or the parts required to be sanctioned, *ipsissimis verbis.* In the year 1854, the City Council passed an Ordinance to aid the Baltimore and Ohio Rail Road with a loan of $5,000,000 of bonds. As the city had no power to issue the bonds, by sec. 10 of the Ordinance it was provided that, " This Ordinance shall have no effect until confirmed by the next General Assembly of Maryland." When this Ordinance was presented to the Legislature, it recited it in the very words of the Ordinance, and then enacted, " That the said above recited Ordinance be and the same is hereby confirmed, etc." Act of 1854, ch. 34, Rev. Ord. of 1858, p. 650.

*Exactly similar instances are to be found in the Act **92** of 1858, ch. 369, Rev. Ord. 1858, p. 713, and in the Act of 1861-2, ch. 29, in relation to Public Parks, in 1 Supplement to Code, Local Laws, Art. 4, p. 41. There are many other instances. These words have had not merely a legislative usage fixing their construction, but a judicial decision indicates their necessary import. *Dulany v. Tilghman,* 6 G. & J. 473.

It is said that sec. 9 of the Ordinance was an application for power to issue bonds to the amount of $500,000 for the purpose of the City Hall, and the condition as to ratification was gratified, if the Legislature granted a greater power as to the amount of the bonds, and on new and fresh terms. But this is clearly to imagine " an intent " in the law-makers of

the Ordinance, and bind the letter of the Act to it. *Their* intent 'is to be collected from the words used. No one is authorized to say that the Councilmen who voted for that Ordinance would have done so on any other terms than those expressed. They might not have been willing to appropriate more than $500,000 — might not have been willing that the bonds should be made redeemable in fifteen years ; might not have been willing to impose upon the taxpayers an immediate obligation to levy a sinking fund· of two cents annually, on every hundred dollars of assessable property. They had a right to fix their own conditions for the operation of the Ordinance on their constituents, and they did so.

As the objection is founded upon the provisions of sections 9 and 11 of this Ordinance, " the Ordinance must stand or fall, according to the construction of those provisions." *Baltimore v. Clunet,* 23 Md. 469.

An examination of the Act of 1866, ch. 1, which it is said did " confirm and ratify " section 9 of the Ordinance, will show a want of compliance with the settled usage as to ratifying and confirming Ordinances. It has no reference to the Ordinance.

**93** The terms of the Ordinance and of section 9 *are not at all equivalent. The terms of the statute are *prospective,* and in such case, must not the construction be that the grant of power is not at all retrospective ? *Dallam v. Oliver,* 3 Gill, 446 ; *State v. Norwood,* 12 Md. 206 ; 24 How. 244 ; *Harvey v. Tyler,* 2 Wallace, 346-7 ; Sedgwick on Stat. Const. 196.

If the Act ratified the Ordinance, then, if the Act had existed before the Ordinance, the Ordinance would have been a valid execution of a part of the delegated power. ·Can it be said that to the extent of $500,000, section 9 would have authorized and directed bonds pursuantly to the Act of 1866, had the Act pre-existed ? Would the courts, under any doctrine of " fair intendment " have held an Ordinance directing bonds to be issued not redeemable in fifteen years, having no sinking fund for their redemption, etc., to be a valid fulfillment of the power granted ·by the Act ? This court would depart, in so ruling, from all the principles· laid down in the cases in which they held delegated powers not to have been pursued. *Baltimore v. Hughes,* 1 G. & J. 480 ; *Holland v. Baltimore,* 11 Md. 186 ; *Baltimore v. Porter,* 18 Md. 284 ; *Baltimore v. Eschbach,* 18 Md. 282.

It follows that the Ordinance *creating* the office of a Building Committee for the new City Hall is of *no* effect, and that the nomination in May, 1867, of the respondents and their confirmation as a Building Committee, was done when there was *no* office in existence. "In all cases of corporate elections, it is indispensable that an actual vacancy shall have occurred before the election is made ; there cannot be a valid election until a vacancy in the office *to be* elected to, has actually occurred." Grant on Corp. 82 Law Lib. 212-13.

*Multo fortiori*, must the office exist when the appointment is made. When an existing office will become vacant during the recess of the appointing power, then by anticipation the *prospective vacancy may be filled. This is the only **94** exception. *Marshall v. Harwood*, 5 Md. 433.

Clearly then there was no office and no valid appointment to one. There merely exists, by the Act of 1866, ch. 1, a delegated power which has to be carried out, "only in the way in which all their powers are executed, by an Ordinance adopted for that purpose." *Baltimore v. Porter*, 18 Md. 300.

The appellees then are not officers at all *de facto*, much less are they officers *de jure*. The next question to be considered is the effect of the supplementary Ordinance, approved July 23rd, 1867. This supplement was passed by the Mayor and City Council in its legislative capacity. The fact of its being made is a palpable contradiction of all the previous theories of the appellees. It is an admission that section 9 of the Ordinance of 1865, has not been ratified, either by the Act of 1866, or by the appointment of the respondents ; that the Act is not *proprio vigore* a substitute for section 9, that the bonds could not be issued except by an Ordinance entirely passed by the Mayor and City Council, and not in part composed of an Act of Assembly, and it is a further admission that the power delegated by the Act of 1866, had to be executed by an Ordinance subsequently passed, inasmuch as the first Ordinance was not ratified. This supplement makes not the slightest allusion to the Building Committee or their previous appointment. Unless, therefore, the doctrine of construction in *pari materia* supplies this supplement with words ratifying the previous invalid appointment, (assuming that a legislative Act could thus operate executively,) there is not the least relevancy to

the supplement to the case.  For assuming that it did ratify the previous Ordinance of 1865, and remove the restrictive effect of section 11 of that Ordinance, it is entirely prospective in its terms, and would only operate itself and make the original Ordinance operate from the date of the passage of the supplement, that is, the 23rd of July, 1867.  *Ely v. Holton*, 15 N. Y. 595.

**95**     *In legal effect, it would be the passage of the Ordinance *creating* the office of the Building Committee, and carrying out the power delegated by the Act of 1866, on the 23rd of July, 1867.  Then, for the first time, has either of these Ordinances any legal existence as an operative law.  As the appointment of the appellees was made in May, antecedently to this, it was a " nugatory act," and nothing has been done since to give it any validity.  *Taylor v. Hebden*, 24 Md. 213. This disposes of the appellees as officers *de jure*.  If the supplementary Ordinance had in terms ratified the appointment, it would have been illegal on two grounds.

1st.  Because being made to carry out a delegated power, the Act gave no authority to confirm previous void Acts.  *Baltimore v. Porter*, 18 Md. 301.

2nd.  Because it is not competent for the City Council, in violation of its Constitution, to ratify when acting legislatively an executive appointment.  If they can do this, they could in this manner, also, confirm all appointments.

But in point of fact the supplement did not give operation to the original Ordinance, *assuming* it to have been valid as an execution of the power delegated by the Act.  For it merely professed to modify the terms of section 9 of the original Ordinance, *so much thereof* as was inconsistent with the supplement. *But it left unrepealed the eleventh section.*  Are these mistakes to be corrected under the doctrine of construction in *pari materia ?*  Besides, as the original Ordinance was made dependent on an event that did not occur, and as the original Ordinance was passed by an entirely new City Council, it was not competent to re-enact the original Ordinance by simply passing a supplement to it.  The original Ordinance having failed, it should have been acted on *de novo*.  *Wetmore v. Story*, 22 Barb. 490-495.

*Mandamus* is the proper remedy for the appellant.

Irrespective of the distinction as to the character of an office, as to whether it was created by charter or not, or was municipal or not, the remedy by *mandamus* has been always allowed, to get possession of archives, documents and insignia. *" To an old officer to deliver records to a new one." 1 **96** Siderfin, 31, cited in Comyn's Dig. Tit. Mandamus (*A*); *Rex v. Mildman,* 2 Strange, 817 ; *Rex v. Clapham,* 1 Wils. 305 ; *Crawford v. Powell,* 2 Burr. 1013 ; *Com. of Wash. Co. v. Nesbitt,* 6 Md. 470 ; *Bradley v. Lloyd,* 1 H. & McH. 27-8 ; *Watkins v. Watkins,* 2 Md. 353 ; *Sudbury v. Stearns,* 21 Pick. 148 ; *Wilson v. Bannon,* 4 Texas, 400 ; *People v. Kilduff,* 15 Ill. 492 ; Angell & Ames on Corp. sec. 707.

The delays incident to the *alias* and *pluries* writs, and the law by which the certainty of returns to the attachments were regulated, and the necessity of resorting to an action for a false return, induced Parliament to enact the Statute of Anne, to facilitate such trials in cases connected with *municipal* corporations, when an elected officer had been refused admission, or there had been an amotion. 1 Evans' Stat. at Large, Stat. 9th Anne, ch. 20 ; 2 Selwyn N. P. Tit. Mandamus, sec. 6.

By sec. 4 of that statute, cases of *intrusion* were to be remedied by information in the nature of a *quo warranto.*

The Act of 1828, ch. 78, of Maryland, extended the facilities of the Statute of Anne to *all* corporate offices, and by the second section gave remedy by *mandamus* to cases of *intrusion,* where there was no office. *Clayton v. Corey,* 4 Md. 30; Cole on Crim. Inform. 56 Law Lib. 120.

But *Harwood v. Marshall,* 9 Md. 97-101, decided that the remedy by *mandamus* was applicable, whether the office was corporate or not, and the party was not driven to *quo warranto,* or information in the nature of one. But in *Harwood v. Marshall,* 10 Md. 463-4, it was decided that offices not corporate were entitled to the remedy by *mandamus,* (decided in 1857 ;) but to that remedy, under all the common law delays, and subject to the law as to certainty of returns, and the necessity for an action of false return. This produced the Statute of 1858, ch. 285, by which all *mandamus* cases were triable under the provisions of the Statute of 1828, and could be tried before the court. *Webber* *v. *Zimmerman,* 22 Md. 167. When the **97** Code was made, the codifiers saw no necessity of inserting the

provision of the Act of 1828, as to cases of intrusion, when there was no office, because the decision in *Harwood v. Marshall,* 9 Md. 97-101, had recognized that there was no necessity of resorting to *quo warranto and information in the nature of one.* They accordingly merely codified the portions of the Statutes of 1828 and 1858, which directed and facilitated the remedy. As respects, then, the plans and specifications, the law under its oldest forms makes the remedy proper, and as respects the intrusion, the remdy is decided to be suitable by *Harwood v. Marshall,* 9 Md. 97-101. And this has been entirely recognized by this court in *Tartar v. Gibbs,* 24 Md. 338.

*S. Teackle Wallis* and *I. Nevitt Steele,* for the appellees :

It is not alleged that the appointment of the appellees, or their acceptance of office, was otherwise than *bona fide,* and in the full belief that the original Ordinance was valid and operative. There is no charge that the contracts were made improvidently, uneconomically, or in bad faith, or that they are otherwise than beneficial to the relator and the people, and in proper furtherance of the erection of the City Hall, which is admitted and known to be a pressing public necessity. It is not, and of course could not be denied, that to annul the contracts in question would be a great injury to the contractors who, *bona fide,* contracted with persons held out and recognized by the relator as its officers and as competent to bind it by such contracts. The petition, in praying that the appellees shall be declared not to be or to have been *de jure* a Building Committee and shall be enjoined from acting as such, asks that which practically cuts up those contracts and all the equities of the contractors by the roots. Indeed, as the corporation may, at its pleasure, repeal both Ordinances, *(State v. Graves,* 19 Md. 351,) and thereby put an end to the erection of the hall ; or may change **98** the mode *of its superintendence by putting an end to the Building Committee ; or may get rid of the appellees, if they are personally objectionable, by removing them under the Act of 1868, ch. —, it seems manifest that the avoidance of the contracts, without incurring responsibility for damages in so doing, is substantially the thing aimed at in this proceeding by the relator.

These considerations are sufficient in themselves to bar the

relief prayed. *State v. Graves,* 19 Md. 365, 373-4 ; *Weber v. Zimmerman,* 23 Md. 53 ; *Mottu v. Primrose,* 23 Md. 501 ; *Ex parte Fleming,* 4 Hill, 581 ; *Rex v. Paddington Vestry,* 9 B. & C. 461 ; *Rex v. Fowey,* 2 B. & C. 684 ; Tapping on Mandamus, 76 Law Lib. 67, 68.

The Ordinances and Act of Assembly should be taken together and construed, like statutes *in pari materia,* as one law, passed for a beneficial public purpose, and therefore entitled to every favorable intendment. The power to build a City Hall, and to pay for it out of any moneys in the City Treasury or by the sale of any disposable city property, undeniably existed in the corporation when the first Ordinance was passed. The power to issue bonds was the only one contemplated by that Ordinance for which State legislation was needed. The Act was passed to meet that need and substantially did so in legal contemplation. The subsequent action of the relator, in appointing the Building Committee as provided by the first Ordinance, and in passing the second Ordinance already referred to, must be treated, upon sound principles of legislative construction, as an acceptance by the relator of the modified terms contained in the Act, and as giving, in conjunction with the Act, all needful vitality to the original Ordinance. The strictness of construction which applies to municipal acts, is confined to the mere question of power, but where the thing done can be brought fairly within the scope of the corporate power, the same liberal and favorable construction is given to corporate acts and municipal legislation ; *the same in- **99** ferences are drawn from them, and the same force is attributed to them, which attach to general legislation and the acts of individuals. They are not to be held invalid, unless their nullity is placed beyond reasonable doubt.

The Ordinances of the City, are in fact laws, passed by local authorities which are clothed with certain legislative functions within a prescribed district, for the convenience of good government. They are presumed to be known to the Legislature. They have the character and effect of public laws, and the people are bound to take notice of them. *Balt. v. Porter,* 18 Md. 301 ; *Balt. v. Reynolds,* 20 Md. 14 ; *Balt. v. B. & O. R. R. Co.,* 21 Md. 91-2 ; *Ruppert v. Balt.* 23 Md. 200 ; *Milburn v. State,* 1 Md. 17 ; *Balt. v. Moore,* 6 H. & J. 381-2 ; *Balt. v.*

*Howard*, 6 H. & J. 383 ; *Holland v. Balt.*, 11 Md. 196 ; *Balt. v. Eschbach*, 18 Md. 282 ; *Canal Co. v. R. R. Co.*, 4 G. & J. 128, 152 ; *Balt. v. Clunet*, 23 Md. 467 ; *State v. B. & O. R. R. Co.*, 12 G. & J. 438 ; *Balt. v. State*, 15 Md. 452, 491-2 ; *Burgess v. Pue*, 2 Gill, 287-8 ; Smith Com. on Stat. & Const. Law, secs. 642-646 ; *Balt. v. White*, 2 Gill, 459-60 ; *Susq. Bk. v. Gen'l Ins. Co.*, 3 Md. 311-12.

In cases like the present, every intendment will be made, *ut res magis valeat*, and municipal corporations will be held bound by acts of ratification and estoppel like private individuals. In this suit, the relator is impeaching its own acts, asserting the nullity of its own appointments, and denying the validity of contracts made under its own actual direction and for its service and benefit. Its grounds of justification for so doing involve no denial of its original or present corporate power to create and appoint the officers in question, but merely assume the continuing operation of a self-imposed restriction, contained in the first Ordinance. Its acts, therefore, are not to be considered from the point of view of acts *ultra vires*, in the common sense of those words, when used in reference to bodies with limited powers, but the inquiry is, whether or not the corporation has removed its own restriction on the exercise of its own conceded powers. The effort of the appellees, therefore, is not, as is erroneously assumed, to give powers to the corporation retroactively, by estoppel from its own acts (which of course could not be), but simply to deduce from those acts its removal of the restriction which it voluntarily placed on its own powers, and therefore might voluntarily remove. For such purpose and to such effect, ratification and estoppel may result from its acts, in this case, as from those of any party whose powers are entirely unfettered. *Tash v. Adams*, 10 Cush. 252 ; *Crawshaw v. Roxbury*, 7 Gray, 374 ; *Peterson v. N. Y.*, 17 N. Y. 449 ; *Sharp v. N. Y.*, 40 Barb. 256 ; *Alexander v. Walter*, 8 Gill, 239, 254 ; *McClellan v. Kennedy*, 8 Md. 250-1 ; *Balt. v. White*, 2 Gill, 444 ; 2 Smith Lead. Cases, 756 ; *State v. Van Horn*, 7 Ohio, N. S. 327, 332 ; *Bulkley v. Derby Co.*, 2 Conn, 252; *Knox County v. Aspinwall*, 21 How. 544-5 ; *Zabriskie v. R. R. Co.*, 23 How. 400 ; *Bissell v. Jeffersonville*, 24 How. 299, 300 ; *Rogers v. Burlington*, 3 Wallace, 667 ; Code Pub. Local Laws, Art. 4, sec. 25.

Apart from the foregoing considerations involving the merits of the questions at issue, the jurisdiction of the court in *mandamus*, in this case, is denied by the answer.

The petition does not set up a case of intrusion into office, or of officers holding over after they have ceased to be such. It goes upon the ground, not that the appellees are unlawfully acting in the name and capacity of lawfully created officers, but that there are no such officers at all. It does not assert that there is such a body as a " Building Committee of the new City Hall," and that the appellees are *de facto* and unlawfully, exercising its powers, but affirms that there is no such body in existence. It is framed with great professional ingenuity, so as to invoke the jurisdiction which is claimed in the *brief **101*** for cases of intrusion, while really denying that there is any office into which the appellees have intruded.

Properly regarded, the petition is for relief in a matter which, if wrong, is easily remediable without the intervention of a *mandamus*. It is simply to obtain possession of certain plans and specifications from certain alleged wrongdoers, who, if they are such, can be reached by *trover* or replevin. The prohibitory relief prayed is of course needless, if the appellees are assuming to act as a body which never existed, for their acts are in that case wholly void. Indeed, their acts are assumed by the petition itself to be wholly null.   *Kendall v. Stokes*, 3 How. 100 ; *Kendall v. U. S.*, 12 Pet. 620 ; *Turner's Case*, 5 Ohio, 543 ; Moses on Mandamus, 17 ; Tapping on Mandamus, 76 Law Lib. 57, 58 ; *U. S. v. Commissioner*, 5 Wallace, 565.

The Code prescribes nothing as to jurisdiction in *mandamus*, but only regulates the practice. The law therefore stands as at common law, under the adjudications of our own courts.

Miller, J., delivered the opinion of the court :

The main subject of inquiry, and the question upon which this case turns is, had the appellees, at the time this proceeding was instituted, authority to act in the capacity of " The Building Committee of the new City Hall," and make the contracts and do the other acts referred to in the petition for the writ of *mandamus ?*

It is conceded no such office existed, either under the laws of the State or the Ordinances of the City, prior to the passage of Ord. No. 58, approved the 25th of September, 1865. The first section of that Ordinance provides " that the Mayor shall appoint, subject to the approval of the City Council in convention, four persons," who with the Mayor shall constitute a Board of Commissioners, to be styled " The Building Committee of the new City Hall." By subsequent sections **102** \*the powers of these officers are defined, including the power to make contracts for labor and materials for the erection of the building. By section 9 it is enacted : " That in order to meet the disbursement required by this Ordinance, the Commissioners of Finance, be and they are hereby authorized and directed to issue $500,000 of city bonds, or so much thereof as is necessary, from time to time, bearing six per cent. interest, payable *semi-annually*, and redeemable *at the pleasure* of the Mayor and City Council of Baltimore, *at any time after* the 1st of July, 1893, and dispose of the same at market price, and deposit the proceeds with the City Register, who shall set aside the same as a fund to be applied towards the erection of a new City Hall, as herein provided for ; " and by section 11 it is enacted and ordained : " That *this Ordinance* shall have *no effect until* the *ninth section* shall be *confirmed and ratified* by the General Assembly of Maryland."

From this language it is too plain for argument that the whole Ordinance, including the power to appoint these officers, was to remain inoperative until some thing was done by the Legislature of the State to give it vitality. It is not, however, open to objection on this ground, for this court has decided that a municipal corporation may pass an Ordinance, within the limits of their delegated powers, contingent as to its operation and effect, on the existence or occurrence of facts germane to its subject-matter. " A valid law may be passed to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties ; and the same principle applies to an Ordinance passed by a municipal corporation, within the legislative powers delegated to the corporation, provided it does not appear that the contingent event is foreign to the subject-matter of the Ordinance, and wholly unconnected with the consideration

of the public convenience, upon which alone the Ordinance must be based." *Balt. v. Clunet,* 23 Md. 469.

*To ascertain the meaning of the terms used in section 11, and the design and intention of the framers of the Ordinance, in adopting this restriction upon its operation, resort must be had to the same general rules of construction which govern the interpretation of Acts of the Legislature ; such rules are equally applicable to the legislative acts of a municipal corporation, passed within the scope of its delegated powers. *Balt. v. Howard,* 6 H. & J. 382 ; *Balt. v. Clunet,* 23 Md. 468. The courts cannot *presume* an intent, but must *collect* it from the words of the Act and the cause or necessity of its passage ; they cannot correct mistakes nor supply omissions. " We are not at liberty to imagine an intent, and bind the letter of the Act to the intent ; much less can we indulge in the license of striking out and inserting and remodeling, with a view of making the letter express an intent which the statute, in its native form, does not evidence." *Alexander v. Worthington,* 5 Md. 485. " When the Legislature has used words of a plain and definite import, it would be very dangerous to put upon them a construction, which would amount to holding that the Legislature did not mean what it has expressed." Dwarris on Statutes, 703.

It was undoubtedly within the powers delegated to the city to provide, by Ordinance, for the erection of this building, and to appoint and create the necessary agents and officers to superintend its construction ; but it is conceded that money for that purpose could not be raised by the *issual of city bonds,* unless power to that end was granted by the Legislature. Instead of first obtaining the necessary grant of power, and then passing Ordinances in execution of it, the Council who passed this Ordinance themselves framed and adopted, in section 9, a plan for issuing the bonds, limiting their amount, fixing the time after which the city might redeem them at its pleasure, and the rate and times of payment of interest, and then made the effect and operation of the whole Ordinance to depend upon the sole contingency of the confirmation *and ratification of this plan by the Legislature. Their right to do this is unquestioned, and it was eminently proper that the members of the City Council, representing their constituents,

should be the judges of the amount and mode of taxation to be imposed, for this purpose, upon the taxpayers of the city. Giving to the language of section 11 its plain and ordinary import, we cannot infer an intention that the Ordinance was to take effect whenever the Legislature should grant power to raise money by issuing bonds for such an amount, and on such terms as the Act bestowing the power might prescribe. The intent must be collected from the words, and we cannot infer that those who adopted this Ordinance would have done so on any other terms than those expressed, or would have been willing that their constituents should be taxed for any other amount, or in any other mode, or at any other time. They had the right to fix their own conditions for the operation of the Ordinance on their constituents, and have done so in plain and emphatic language. They have said, no part of this Ordinance shall be effective until its ninth section shall be confirmed and ratified by the Legislature. They have not said it shall become operative when the ninth section shall be confirmed and ratified, *or when the General Assembly shall grant power to issue bonds on different terms and conditions,* and we can add no such clause to the condition thus plainly expressed. Some Act of the Legislature confirming and ratifying its ninth section was, therefore, essential to the lawful exercise of the power to appoint the officers provided for in the first section of this Ordinance.

With regard to the mode of confirmation, there is little difficulty if we look to legislative practice in such cases. Ordinances precisely similar have frequently been submitted to the Legislature for confirmation, and the practice established by numerous precedents cited in argument, is for the confirming Act to recite the Ordinance in its very words, then to enact that **105** the same be ratified and confirmed, and grant *the power to carry it into effect. We do not mean to say this is the only mode in which such confirmations can be made, for if the intent to confirm can be plainly found in the occasion, the subject matter, and the language of the Act relied on as confirmatory, it will amount to a ratification even if the terms " confirm and ratify " be not used. In *Dulany v. Tilghman,* 6 G. & J. 473, where it was insisted a deed had been confirmed by an Act of the Legislature, the court say : " If we could be

convinced that such was the design of the Legislature, it must be carried into effect ; but their intention must be ascertained, not by *remote inference* or *vague conjecture,* but collected from the nature of the application made to them, and the terms they have used in granting it."

With this exposition of the Ordinance, and the same rules of construction as our guides, let us examine the Act of 1866, ch. 1, which is alone relied on as the required legislative action. Its title is " An Act authorizing the Mayor and City Council of Baltimore, to build a new City Hall;" and the only provisions in the body of the law are these :  " That for the purpose of building a City Hall, and such other improvements connected therewith as may be deemed necessary, the Mayor and City Council of Baltimore, be and they are hereby empowered to issue City bonds in certificates of not less than $100 each, *redeemable in fifteen years,* bearing six per cent. interest, *payable quarterly,* and transferable as other City bonds, to an amount not exceeding $600,000, and *shall provide* a sinking fund of *two cents* on every $100 of assessable property *annually,* for the redemption of the bonds so authorized to be issued : *provided,* said City Hall shall not be commenced within one year from the passage of this Act."  Not only is there no reference either in the title, or the body of the law, to the Ordinance of 1865, and an entire absence of any words of confirmation or ratification, but the provisions of the law, in every material respect, differ from those of the ninth section of this Ordinance. It authorizes the raising of a larger sum, makes the bonds unconditionally redeemable in a much *shorter **106** time, imposes an obligation to provide a sinking fund by an annual tax for the redemption of the debt, and the whole law is subject to a proviso that the work shall not be commenced within one year from the passage of the Act.  It is true both the law and the Ordinance refer to the same subject, and the former is a grant of power to issue bonds, and this, with precedence in point of time, of the Ordinance to the law, are the only circumstances from which confirmation or ratification can be imagined.  But to infer such intent from these circumstances would be to draw remote inferences and indulge in vague conjecture.  Every conceivable purpose of the Legislature, so far as appears from the face of the Statute, is gratified by con-

struing this Act not as confirming, ratifying, or consenting to any provisions of the Ordinance, but as an independent grant of power to be exercised by *future conformable legislation* on the part of the City Corporation. Such is its natural construction, and such, in our opinion, was the design of the Legislature in passing it. But if further reasoning on this subject be needed, let us suppose the Act had existed before the Ordinance, and then ask the question, would an Ordinance directing bonds to be issued as provided in this ninth section, be a valid execution of the power granted by the Act ? Unless this question can be answered in the affirmative, it cannot be said the Act confirmed and ratified this ninth section, and no such answer can be given without disregarding long established and well settled principles of law regulating the execution of delegated powers. In such a case the mode is the measure of the power.

There being then no confirmation or ratification of its sec. 9, the whole Ordinance, by force of the restrictive terms of its eleventh section, was of " no effect," and yet, without any repeal of this restriction or re-enactment of the Ordinance, and consequently when no such office existed, the Mayor, with the approval of the Council in Convention, in May, 1867, appointed the appellees as members of this committee, and under color of this appointment, they now assume to act in

**107** \*discharge of the duties of their supposed office. At this point, we might rest our decision by stating the obvious conclusion, that this unauthorized appointment to an office which had no existence, was a mere nugatory act, conferring upon the appointees no authority whatever. But other views which demand consideration, are presented in the answer, and the opinion of the court below, and have been earnestly pressed upon our attention by the forcible and ingenious arguments of the counsel for the appellees.

It is said the appointment itself, being the act of the corporation through its executive and legislative departments, and within the scope of its corporate powers, was, in contemplation of law, a removal of the restriction contained in its eleventh section, and operated to make the Ordinance effective. But no such effect can, in our opinion, be attributed to this Act without subverting essential provisions of the City's Charter.

The City Council consists of two Branches, composed of different members, elected for different periods, and when acting legislatively every Ordinance, before it becomes a law, must be passed by each Branch, and approved by the Mayor, or passed over his veto. They have power to pass Ordinances regulating the manner of appointing to office, and, if no such Ordinances be passed, the Mayor nominates, and, with the advice and consent of a Convention of the two Branches, appoints all officers under the corporation whose appointment is not otherwise provided for by the Charter. Code of Pub. Local Laws, Art. 4, sec. 25. A Convention of the two Branches can neither pass or repeal an Ordinance, and it would be a startling anomaly to hold that an unauthorized act of the Mayor and the two Branches in Convention, exercising this appointing power, could validate itself by operating simultaneously as a legislative proceeding effecting a repeal of this restriction in the Ordinance of 1865, and thereby creating the office, the existence of which that restriction suspended.

But it is also urged that the subsequent Ord. No. 48, approved July 23rd, 1867, did, in law, as effectually confirm *or re-enact the Ordinance of 1865, as if it had done **108** either in express terms. This Ordinance of 1867, is entitled " An Ordinance supplementary to" that of 1865, and provides that the bonds to be issued under the ninth section of the former, shall bear interest payable quarterly, and be redeemable " at the pleasure of the corporation at any time after the 1st of July, 1882," authorizes an additional $100,000 of bonds to be issued on the same terms, imposes a tax of two cents on the $100 as a sinking fund for the redemption of the debt, and then repeals *so much* of the *ninth section* of the former Ordinance, as may be in conflict with the provisions of this supplement. It is not necessary for the purposes of this case, to determine whether this second Ordinance is a valid execution of power delegated by the Act of 1866, or whether, if it had in express terms re-enacted the Ordinance of 1865, or repealed the restriction of its eleventh section, such re-enactment or repeal would have so operated, in the absence of any reference to the Building Committee, or ratification of their previous appointment, as to make valid the intervening unauthorized appointment of the appellees, for, assuming *argumenti gratia,*

such would in that event have been its effect, it is sufficient to say this Ordinance does not, nor does it profess to make such re-enactment or repeal.   It is apparent, from its face, from its professing to be a supplement to that of 1865, that it was passed upon the same erroneous presumption upon which the appointment proceeded, viz: that the Ordinance of 1865 was *then in force,* and had been made effective by the passage of the Act of 1866, and hence its purpose was not to re-enact or do any thing by which the former Ordinance should be made effective, but treating it as a valid law, to supplement its provisions by new legislation so as to make its ninth section conform to the Act of 1866, and to repeal only such parts of it as were inconsistent with the Supplement.   These views dispose also of the argument founded upon an application to this case of the rule of construing statutes in *pari materia :* for, if the Ordinances of 1865 and 1867, and the Act of 1866 had all **109** *emanated directly from the same legislative source, and were all Acts of the Legislature, and the appointment had been made by the Governor and Senate, the same result would follow.   A law which, by its own terms, is to have no effect until the happening of a future contingent event, cannot be made effective *before* the event happens by any Acts or series of supplements passed upon the assumption that the event *has* happened, and that the law is in force.   All such Acts, instead of possessing any curative powers, merely multiply errors.

Nor is this a case to which the doctrine of estoppel by acquiescence, and by acts *in pais* of ratification can be applied. There may be cases in which a municipal corporation by such means, will be held to have confirmed the acts of a regularly appointed agent or officer beyond the scope of his special authority, provided the corporation had power to authorize such acts to be done, but in such cases the acts of ratification, " should be direct, explicit, unequivocal and with full knowledge of the facts." *Baltimore v. Reynolds,* 20 Md. 14.   But we have been referred to no authority which sustains the position, that an office can be created, or an illegal appointment to an office which does not exist be legalized, by such acts of ratification or acquiescence.   The establishment of such a doctrine would lead to mischievous and dangerous results, and it cannot receive the sanction of this court.

It is decided by the court below that *mandamus* is the proper remedy, if the appellees had no authority to act in the capacity they have assumed. In this view of the law we entirely concur. But it has been correctly urged that in this State the writ of *mandamus* is held to be, not a writ of right grantable as of course, but only at the discretion of the court to whom the application is made, and that this discretion will not be exercised in favor of applicants, unless some just and useful purpose may be answered by the writ. *State v. Graves,* 19 Md. 374. And in this connection it has been argued, with much force, that the city is here impeaching its own acts, asserting the nullity of its own appointments *made under its own **110** actual direction, for its service and benefit, and confessedly within the scope of its delegated power ; that the appellees accepted the office *bona fide,* and in the full belief that the original Ordinance was valid and operative; that there is no charge that the contracts were made improvidently, uneconomically, or in bad faith, or that they are otherwise than beneficial to the city and the people, and in the proper furtherance of the erection of the City Hall which is admitted and known to be a pressing public necessity ; that the annulling of these contracts, and destroying all equities founded on them, would be the practical result of granting the writ, and must be substantially the thing aimed at in this proceeding, because the corporation may, at is pleasure, repeal both Ordinances and thereby stop the erection of the building, or may change the mode of its superintendence by abolishing the Building Committee, or appointing other parties in place of the respondents. These considerations, it is contended, divest the application of all merit, and are, of themselves, sufficient to bar the relief prayed, and justify the refusal of the writ. But we have shown that these parties, without lawful authority, are assuming to act as officers of a municipal corporation—assuming to discharge the duties of an office which has no existence. Upon grounds of public policy, for the purpose of prescribing and enforcing the proper exercise of their delegated powers by these corporations and their agents and officers, such illegal assumptions of power ought not to be permitted ; nor ought the courts to withhold the exercise of their restraining powers, in such cases, by any consideration of the consequences which

may result to those who have inadvertently dealt with parties who thus assume to act without legal authority. No principle of the law relating to municipal corporations is more firmly established, than that those who deal with their agents or officers must, *at their peril,* take notice of the limits of the powers both of the municipality and of those who assume to act as its agents and officers ; and in no State has this principle been more frequently applied or more rigidly enforced **111** than in Maryland. In *\*Balt. v. Eschbach,* 18 Md. 276, it was held that a party, who had contracted with the City Commissioner, was bound to know the extent of the powers and duties of that officer, and must accept the legal results of mistake or ignorance in this respect. " A municipal corporation," say the court, "cannot be held liable for the unauthorized acts of its agents, although done *officii colore,* without some corporate act of ratification or adoption ; and from considerations of public policy, it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officers, than 'to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public." Further reference to the many cases in which the same doctrine has been sustained would be superfluous. The reasonableness and necessity of the rule rests upon the ground that these bodies corporate are composed of all the inhabitants within the corporate limits ; that the inhabitants are the corporators ; that the officers of the corporation, including the legislative or governing body, are merely the public agents of the corporators ; that their duties and powers are prescribed by Statutes and Ordinances, and every one, therefore, may know the nature of these duties and the extent of these powers. Hence it is, that the plea of *ultra vires* is used by those who are sued by such corporations, and the corporation itself may use it as a defense, or, in a proceeding like the present, may assert, as plaintiff, the invalidity of such acts, either of itself or its agents and officers, as are the subject of complaint in this case. If this were not so, it would become impossible, in practice, to restrain the acts of such corporations and their officers within the limits of their powers.

For these reasons, we are of opinion that a just and useful purpose will be answered by the issuing of the writ in this case, and, to that end, the order appealed from will be reversed and the cause remanded.

*Order reversed and cause remanded.*

---

*JOHN SCHWARZ, Guardian of Albert Henkel, *v.* **112**
CATHERINE STEIN.

*Decided June 17th, 1868.*

Vendor's lien ; waiver.

If the vendor deliver possession of the estate to the vendee before all the purchase money is paid, equity recognizes and will enforce a lien on the land as a security for such unpaid purchase money; and this is so whether the legal estate be or be not conveyed.  (*a*)          p. 117

Such lien exists independent of any special agreement, and as an incident to the contract of sale of real estate, and it exists not only against the vendee and his heirs and other privies in estate, but against those claiming as volunteers, judgment creditors, and all subsequent purchasers for value, having notice that the purchase money or any part thereof remains unpaid.  (*b*)          pp. 117-118

Where the vendor, claiming the benefit of the lien, retains the con-

---

(*a*)  The vendor's lien exists even after the deed has been executed and possession of the property delivered.  It would be more technically accurate to call the lien a grantor's lien; see *Hooper v. Central Trust Co.*, 81 Md. 588; from the time of making a contract for the sale of land, and until payment, the vendor has a mere lien on the land for purchase money; the interest of the vendor in such contract is not real estate, but only personal; and in case of the vendor's death, the unpaid purchase money goes to his personal representatives; *Hall v. Jones*, 21 Md. 439.  Cf. *Dorsey v. Hobbs*, 10 Md. 412, note (*a*).  Formerly a vendor's lien was only enforced if the vendor was remediless at law; but now the lien may be enforced without regard to the remedy at law; Code of Pub. Gen. Laws, Art. 16, sec. 193; and the lien is not waived by the acceptance of the vendee's individual note for the balance of the purchase money, *without other security; Dance v. Dance*, 56 Md. 436; nor by a mortgage to secure the purchase money; see the Code of Pub. Gen. Laws, Art. 66, sec. 4.

(*b*)  Approved in *Christopher v. Christopher*, 64 Md. 586.