FORESTVILLE PARK LIMITED PARTNERSHIP v.
STATE OF MARYLAND ET AL.

[No. 583, September Term, 1981.]

*Decided January 12, 1982.*

The cause was argued before GILBERT, C. J., and MOORE
and MACDANIEL, JJ.

*Ellis J. Koch,* with whom were *Leslie F. Moore* and
*O'Malley, Miles, Farrington & McCarthy* on the brief, for
appellant.

*Susan Z. Whitman, Assistant Attorney General,* with

whom were *Stephen H. Sachs, Attorney General,* and *Fred Wolf, III, Assistant Attorney General,* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

We are called upon to decide whether a regulation of the Department of Economic and Community Development (Department) is valid. If invalid, may its salient provisions be included in an agreement and, thus, be binding as a matter of contract law?

We set forth below the factual pattern giving rise to the issues put to us.

After extensive negotiations, Forestville Limited Partnership (Forestville) entered into an agreement with the Community Development Administration (CDA), a division of the Department. The agreement provided that CDA would make available the sum of $2,434,500 "to Limited Income Mortgagors purchasing" houses built by Forestville.[1] The agreement further provided that the Loan Commitment by CDA was "incorporated into and made a part of this Agreement." The Loan Commitment contained the clause: "A resolution from the appropriate local governing body, endorsed by the Chief Executive Officer of the locality, identifying the sponsor, location, and nature of the Project and approving the Project and CDA's participation in financing the Project, must be submitted to CDA."

The Prince George's County Council adopted a resolution approving the project. The County Executive, however, declined to endorse the resolution. One month later CDA withdrew its commitment because of Forestville's "inability to comply" with the proviso calling for approval by the County Executive.

Forestville then brought suit in the Circuit Court for Anne Arundel County against the State and the Department. The objective of the action was to have the court: declare that the

---

1. The mortgages, we were told on oral argument, bore interest at a rate below that of the commercial rate.

"approval power ... granted to a local governing body" was "limited to land use" only; enjoin the CDA from "reallocating or otherwise utilizing funds covered in the Regulatory Agreement with Forestville ...": direct "the secretary ... [of the Department] to release mortgage funds" to Forestville.

The trial court (Lerner, J.) sustained without leave to amend, a demurrer filed by the State and the Department. This appeal ensued.

Forestville posits three issues to us, *videlicet:*

> "I. COMAR 05.01.05.04 H (2), which requires Local Government approval of a mortgage loan to a developer, exceeds the scope of Md. Ann. Code, Art. 41, § 266DD-1 *et seq.,* which requires only land use approval.
> II. The State of Maryland and the Community Development Agency cannot require, in a contract of adhesion, that Petitioner comply with an illegally promulgated regulation.
> III. The State of Maryland lacks the power to include an illegally promulgated regulation in contract."

We, however, perceive the issue to be as we stated in the beginning, whether a regulation of the Department was validly applied in the instant case. A secondary, but necessary question is what is meant by the statutory language "the Administration shall work closely, consult and cooperate with local elected officials."

CDA was created by Laws 1970, ch. 527, § 12 and codified as Md. Ann. Code Art. 41, § 266DD. The Legislature stated the reasons for the establishment of that agency in Art. 41, § 266DD-1 as follows.

> "(a) It is found and declared that in this era of rapid population growth and expansion and of increasing urbanization, there is a need, in many areas of the State, to promote sound community development.

It is further found and declared that the counties and municipalities of this State do not have adequate resources to, and the ordinary operations of private enterprise cannot without State assistance, deal effectively with all of the problems of sound community development.

It is further found that a need exists to coordinate and concentrate federal, State, regional and local public and private community development efforts and resources.

It is further found and declared that there is a shortage of adequate, safe, and sanitary housing for families of limited income particularly; and that by increasing the housing supply for families of limited incomes this shortage will be alleviated and sound community development promoted.

It is further found and declared that the increase of opportunities for home-ownership is desirable and promotes sound community development.

It is further found and declared that the reduction of the consumption of energy and the increase in the utilization of solar energy by the provision of financial assistance to encourage energy conservation and solar energy improvements to housing and buildings used for commercial purposes promotes sound community development and is otherwise in the public interest.

It is further found and declared that to promote sound community development is a proper public purpose and State use for which public money may be expended and property may be acquired, and that the functions and responsibilities of the Community Development Administration as hereinafter set forth are necessary and proper for the purpose of achieving the ends here recited.

(b) The Community Development Administration is hereby created as a division of the principal Department of Economic and Community

Development to coordinate the various activities and programs which may contribute to sound community development, to encourage and facilitate the development of new and existing communities by reducing the costs of development through grants and loans, to encourage and facilitate energy conservation and the utilization of solar energy in housing and commercial buildings by providing grants, loans, and other forms of financial assistance, making available land for such development and by assisting the efforts of private enterprise, municipalities, counties, local public agencies and local development corporations. Except for grants for energy conservation in residential buildings which may be awarded to the Administration under Title V of the Energy Security Act, P.L. 96-294, grants of land or money shall be limited to local governments or to organizations which are defined under § 266DD-3 (d), (e), (f), and (g)."

Obviously aware that the program would have a better chance of success if it had the approval of the government of the political sub-division, the General Assembly provided in pertinent part in Article 41, § 266DD-5:

"(a) *Approval of contract, arrangement or agreement. — In accordance with regulations promulgated by the Secretary of Economic and Community Development,* [2] any contract, arrangement or agreement entered into for purposes of carrying out its functions and responsibilities under § 266DD-4 hereof, shall be approved by the Secretary and where required by law by the Board of Public Works.

---

**2.** Md. Ann. Code art. 41, § 257K (e) provides that "[t]he Department shall promulgate such rules as are necessary to carry out the purpose of this subheading." The subheading includes the CDA.

(b) *Local approval of land use.* — *The Administration shall be required to obtain approval of the land use for a community development by resolution of the appropriate local governing body of the locality in which the development is situated before acquiring by grant, gift, purchase, or otherwise real property, which is not open, predominantly open, or undeveloped land, personal property or mixed property and owning, holding, clearing, improving, constructing, or rehabilitating, and selling, assigning, transferring, leasing, mortgaging, or otherwise disposing of same or any combination of the foregoing.* The Administration shall also be required to obtain such approval from the appropriate local governing body before building or constructing housing on any real property.

. . . .

(d) *Compliance with local laws, etc.* — In effectuating the purposes of this subheading, the Administration shall comply with the requirements of local laws, ordinances, codes, charters or regulations applicable to such community development project.

(e) *Cooperation with local officials; consideration to local needs and goals; use of private enterprise.* — *In effectuating the purposes of this subheading, the Administration shall work closely, consult and cooperate with local elected officials.* The Administration shall give primary consideration to local needs and desires and shall foster local initiative and participation in connection with the planning and development of community developments. Wherever possible, the Administration shall carry out community development projects in conjunction with and through the use of private enterprise, limited dividend corporations, local development agencies and local development corporations. Consideration shall also be given to local and regional goals and policies as expressed in urban renewal,

community renewal and local comprehensive land use plans and regional plans." (Emphasis supplied.)

The Department promulgated COMAR 05.01.05.04 H (2), which states:

"(a) A mortgage loan closing will not be made until the Administration has received a certified copy of an approving ordinance or resolution, duly adopted by the legislative body of the municipality or county in which the project is located (or the Board of Estimates in Baltimore City). The ordinance or resolution may be in any form so long as it contains the following information:

(i) Identity of the sponsor;

(ii) Location and nature of the project;

(iii) Certification of the fact that the Community Development Administration will finance the project;

(iv) Approval of the mortgage loan.

(b) In addition, before the mortgage loan closing is made *approval must be given by the county executive* of a chartered county, or the mayor of a municipality (if he is not a member of the city council). This approval may be made by endorsement of the ordinance or resolution, or by separate writing. Obtaining local approval is the responsibility of the sponsor." (Emphasis supplied.)

Forestville reads Art. 41, § 266DD-5 (e) as meaning simply that CDA will cooperate with the local subdivision with respect to land use. Appellant further interprets COMAR 05.01.05.04 H (2) as being without the scope of the Department and, thus, a nullity. We have an entirely different view.

In construing the statute, we seek to ascertain the actual intent of the Legislature. *Pennsylvania National Mutual Casualty Insurance Co. v. Gartleman,* 288 Md. 151, 416 A.2d 734 (1980). This intent must first be sought in the language

of the statute giving the terminology employed its ordinary meaning. *Harbor Island Marina, Inc. v. Board of County Commissioners,* 286 Md. 303, 407 A.2d 738 (1979). Where there is no ambiguity, a court will not go beyond the words of the statute. *Prince George's County v. The Equitable Trust Co., Inc.,* 44 Md. App. 272, 408 A.2d 737 (1979), *cert. denied,* 287 Md. 751 (1980). Since the words of section 266DD-5 are plain and unambiguous, we need not search beyond the statute's terms for the legislative intent.

We read Art. 41, § 266DD-5 (b), abovequoted, to mean that the CDA must obtain approval from the local government as to land use before, *inter alia,* it advances mortgage funds. We do not read the section as limiting CDA's cooperation to land use. On the contrary, we think that when the Legislature provided in section 266DD-5 (e) that the CDA "shall work closely, consult and cooperate with local elected officials" it meant precisely what it said, and that section 266DD-5 (e) applies to all phases of a CDA undertaking in any political subdivision of the State. It is difficult to understand how CDA can "work closely, consult and cooperate" with the local elected governmental officials if that language were construed to mean that CDA possessed the authority to put the project in the county or municipality, notwithstanding the opposition of local elected officials. Indeed, if CDA could, as Forestville would have it, say that "we have consulted and cooperated and now we are going to put the project in your area irrespective of your opposition," the directive mandated in Art. 41, § 266DD-5 (e) would amount to a hollow expression devoid of real meaning.

Furthermore, the provisions of Art. 41, § 266DD-5 (a) confer upon the Secretary of the Department the authority to promulgate regulations to carry out the legislative intent. COMAR 05.01.05.04 H (2) does precisely that. The county executive is the highest elected public official in the county government, and, consequently, his approval is necessary in order to comply with Art. 41, § 266DD-5 (e).

We hold that Judge Lerner properly granted the demurrer in favor of the appellees. To arrive at any other result would require the Court to rewrite the statute and thwart the legislative will.

*Judgment affirmed.*
*Costs to be paid by appellant.*