**Gen. 17]** 17

**HOUSING**

CONSTITUTIONAL LAW – SEPARATION OF POWERS – FEDERAL PREEMPTION – WHETHER "LOCAL APPROVAL" REQUIREMENT IMPLEMENTED BY DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT VIOLATES SEPARATION OF POWERS PRINCIPLE OF STATE CONSTITUTION OR FEDERAL LOW INCOME HOUSING TAX CREDIT LAW

April 13, 2011

*The Honorable Jamie Raskin*
*Maryland Senate*

You have asked for our opinion concerning part of the process that the Department of Housing and Community Development ("DHCD") follows in administering two of its multi-family rental housing programs. In particular, as a condition to the award of program benefits, DHCD requires that a project have the endorsement of the governing body of the jurisdiction in which it will be located. You have posed the following two questions concerning this local approval requirement:

> 1. To the extent that these requirements effectively confer a veto power on the executive and legislative governments of local jurisdictions over the allocation of funding from these statewide programs that are administered by the Executive branch, do these requirements violate the constitutional separation of powers by delegating exercise of an Executive function in state government to the formal decision-making processes and discretionary judgments of non-Executive actors or by conditioning exercise of Executive functions on the formal decision-making processes and discretionary judgments of non-Executive actors, i.e., the executive and legislative branches of the governments of the local jurisdictions?

> 2. The federal Low Income Housing Tax Credit program vests administrative

> authority over the Tax Credit to state housing finance agencies. Do the state requirements discussed above violate the federal law governing the tax credit program by in essence delegating effective state administrative control over the federal programs to local jurisdictions? Does this scheme defeat the purposes of the program?

For the reasons discussed below, it is our opinion that the local approval requirement, as designed by the General Assembly and implemented by DHCD, does not violate the separation of powers principle of the State Constitution. Moreover, in our view, the requirement does not violate the federal law that is the basis for one of the programs.

# I

## Background

Your inquiry concerns two programs administered by DHCD to finance affordable multi-family rental housing projects. One program, known as the Rental Housing Production Program ("RHPP"), is established by State law. The other, called the Low Income Housing Tax Credit Program ("Tax Credit Program"), is based on federal tax law and is implemented by state agencies. DHCD administers both housing programs, as well as others, according to a comprehensive underwriting and approval process.

### A.    *Rental Housing Production Program*

RHPP is currently codified at Annotated Code of Maryland, Housing and Community Development Article ("HCD"), §4-1501 *et seq.* The purpose of RHPP is, among other things, to "increase the supply of decent, safe, and sanitary rental housing for occupancy by families of lower income." HCD §4-1503. The program provides various types of financial assistance for projects that set aside a minimum number of dwelling units for families with incomes below a certain threshold. HCD §§4-1504, 4-1505, 4-1506.[1] RHPP

---

1 The program is also authorized to help finance the conversion of office or commercial space to rental housing, although such projects are relatively infrequent. *See* HCD §1-1504(a)(1).

is funded with special funds appropriated in the State budget. HCD §4-504(c)(1)(ii).

The statute establishes a number of conditions for participation in RHPP. For example, financing is limited to "development costs" as defined by HCD §4-1501. Certain criteria must be applied in determining the maximum income limits for qualifying families. HCD §4-1505. The statute provides a formula for establishing the minimum number of rental units that must be income restricted and sets forth a minimum period of time that rental units must be restricted to lower income families. HCD §4-1504.

Your inquiry concerns a requirement that a project have the endorsement of the local government in order to be eligible for RHPP financing. In particular, the statute provides that DHCD "may approve an application for a project *only if the political subdivision in which the project is to be situated has: (1) approved the project*; and (2) (i) contributed to reducing the development costs or operating costs; or (ii) otherwise supported the project." HCD §4-1508(a) (emphasis added). In deciding whether to finance a project, DHCD is to consider, among other relevant factors, the contribution of the political subdivision for the project. HCD §4-1508(b).

DHCD has incorporated the statutory local approval requirement in its regulations. Those regulations require that local approval "shall be evidenced by a certified copy of an ordinance or resolution duly adopted by the appropriate governing body of the political subdivision and approved by the chief executive officer of the political subdivision, if any, setting forth: (1) The identity of the sponsor; (2) The location and nature of the project; and (3) Approval of the loan." COMAR 05.05.01.07C.

### B.   Tax Credit Program

The Tax Credit Program has its origins in the federal Low Income Housing Tax Credit Law, which was part of the federal Tax Reform Act of 1986. Pub.L. 99-514, Title II, §252(a), 100 Stat. 2189 (October 21, 1986), *codified at* 26 U.S.C. §42. The Low Income Housing Tax Credit Law uses federal tax credits to create incentives for developers to construct and renovate low income rental housing. *See* Ballard, *Profiting from Poverty: The Competition Between For-Profit and Nonprofit Developers for Low-Income Housing Tax Credits*, 53 Hastings L. J. 211, 216-19 (2003); Shah, *Having Low Income Housing Tax Credit Qualified Allocation Plans Take into Account the Quality of Schools at Proposed Family*

*Housing Sites: A Partial Answer to the Residential Segregation Dilemma*, 39 Ind. L. Rev. 691 (2006).

Administration of the program is delegated by the federal statute to state and local housing agencies – referred to as "housing credit agencies." *See* 26 U.S.C. §42(h). In Maryland, DHCD acts as the housing credit agency and allocates tax credits for residential rental properties in the State. Within DHCD, the Tax Credit Program is the responsibility of the Community Development Administration ("CDA"), which is authorized by State law to carry out housing and community development programs. HCD §4-211.

CDA's powers are subject to various constraints under State law. Its agreements must be approved by the Secretary of Housing and Community Development ("Secretary") and, in some cases, by the Board of Public Works. HCD §4-213(a). A project financed by CDA must comply with applicable zoning and building codes. HCD §4-213(c). CDA's enabling law also directs it to "work closely, consult, and cooperate with local elected officials" and "give primary consideration to local needs and desires." HCD §4-213(f)(i)-(ii). In carrying out this legislative direction, CDA has long required explicit approval of a project by the local governing body.[2] The Court of Special Appeals has held that the agency has correctly construed the legislative intent of this statute in requiring local approval of projects. *Forestville Park Ltd. v. State,* 50 Md. App. 570, 539 A.2d 46 (1981).

In *Forestville*, CDA entered into an agreement with a developer to provide financing for limited income purchasers of homes built by the developer. As required by a CDA regulation, the agreement was contingent on a resolution by the local governing body, endorsed by its chief executive, approving the project and acknowledging CDA's participation. Although the county council passed a resolution approving the project, the county executive declined to endorse it and CDA withdrew from the agreement. The developer sued to enforce the agreement, arguing that the local

---

2 For projects that fit the description of "community development projects" in HCD §4-217, and for which CDA provides financing under HCD §4-225(a)(1), there is an additional local approval requirement. CDA must obtain approval of the land use for the project by a resolution of the local government for the jurisdiction in which a project is to be located. HCD §4-213(b).

approval was required solely with respect to land use[3] and should not have been required as to the agreement generally.

The Court of Special Appeals held that CDA had reasonably construed the statutory mandate to cooperate with local jurisdictions. It stated:

> [w]e think that when the Legislature provided in [HCD §4-213(f)] that the CDA "shall work closely, consult and cooperate with local elected officials" it meant precisely what it said, and that [HCD §4-213(f)] applies to all phases of a CDA undertaking in any political subdivision of the State. It is difficult to understand how CDA can "work closely, consult and cooperate" with the local elected government officials if that language were construed to mean that CDA possessed the authority to put the project in the county or municipality, notwithstanding the opposition of local elected officials. Indeed, if CDA could, as [the developer] would have it, say that "we have consulted and cooperated and now we are going to put the project in your area irrespective of your opposition," the directive mandated in [HCD §4-213(f)] would amount to a hollow expression devoid of real meaning.… To arrive at any other result would require the Court to rewrite the statute and thwart the legislative will.

50 Md. App. at 577-78. The Court also concluded that the CDA regulation requiring the endorsement of the chief executive of local government was within the agency's authority to adopt regulations and was an accurate interpretation of legislative intent. *Id.*[4]

---

3 Land use approval is required by statute for projects designated as "community development projects." *See* footnote 2 above.

4 The regulation at issue in *Forestville* was later repealed and replaced with new regulations that incorporate the local approval requirement. In particular, COMAR 05.05.06.04A requires CDA to administer the Tax Credit Program in accordance with the State's Qualified Allocation Plan (the "QAP"), created pursuant to 26 U.S.C.

(continued...)

### *C. DHCD Process*

DHCD has incorporated the local approval requirement in its procedures for applications for financing under various programs, including RHPP and the Tax Credit Program. Those procedures are set forth in DHCD's Multifamily Rental Financing Program Guide (January 24, 2011) (the "Guide"). Competition for financing assistance is high and, pursuant to the process outlined in the Guide, DHCD conducts a comprehensive underwriting and construction review process to assess applications.

DHCD first determines whether a project meets certain threshold requirements. Guide at pp. 9-24. Among the threshold factors is "Local Government Support and Contribution." *Id.* at pp. 11-12. In particular, the Guide indicates that an application for funding include either a final resolution of support, or a letter of support from the highest elected official of the local jurisdiction indicating his or her favorable support of the project in the current funding round. After DHCD approves the application for financing, the Guide states that the project sponsor is to submit a resolution supporting the project from the local governing body and its highest elected official prior to closing. *Id.* In addition, a "local contribution" is to be made to the project by the local governing body from local resources to reduce development or operating costs of the project. *Id.*[5]

If a project satisfies the threshold criteria, DHCD rates it according to the nature and character of the development, and then ranks it against the other projects included in that funding round. Guide at pp. 25-45. To establish the ranking, DHCD evaluates each project and awards points, up to a maximum of 315, based on various criteria. *Id.* at pp. 25-26. DHCD's evaluation criteria

---

4 (...continued)
§42(m). The QAP incorporates by reference DHCD's Multifamily Rental Financing Program Guide, which includes the local approval requirement. *See* Part I.C. of this opinion.

5 The Tax Credit Program and RHPP are not the only DHCD programs for which applicants must obtain local approval. For example, DHCD's Division of Neighborhood Revitalization ("NR") must obtain local approval prior to funding a small business loan or grant under the Neighborhood Business Development Program and prior to financing a loan or grant under the Community Legacy Program. HCD §§6-306(b)(4), 6-207(b).

include: (i) the capacity of the project's development team (*e.g.*, experience, financial capacity and minority participation); (ii) the project's public purpose (*e.g.*, income targeting, family housing, housing for individuals with disabilities, and tenant services); (iii) the project's location and marketability (*e.g.,* housing in certain designated impacted areas and projects in rural areas); (iv) the project's development quality (*i.e.*, amenities, design criteria, and sustainability); (v) the project's construction or rehabilitation cost limits; and (vi) the amount of non-State resources and long-term operating subsidies supporting the project.

After the projects are rated and ranked, recommendations for funding are submitted to the Director of DHCD's Division of Development Finance, who in turn submits a detailed written presentation of the recommended projects to DHCD's Housing Finance Review Committee (the "Loan Committee"), an advisory committee that has a majority of members from outside DHCD. *See* HCD §4-208.[6] DHCD staff presents information and recommendations to the Loan Committee concerning projects applying for RHPP and Tax Credit Program financing. After those presentations, the Loan Committee decides whether to recommend approval of the projects to the Secretary.

The Secretary approves (or disapproves) each project in writing. The Secretary typically also provides DHCD staff with specific parameters for possible modifications of the financing terms and conditions of approved projects, depending on individual project needs and circumstances. The approvals also delegate authority among DHCD staff to perform the necessary tasks and to execute documents to complete transactions.

---

6 The Loan Committee's members are appointed by the Governor on the recommendation of the Secretary. HCD §4-208. The Loan Committee is comprised of three employees of DHCD; one employee of the Executive Branch of State government who is not employed by DHCD; and three members of the public. *Id.*

## II

## Analysis

### A. *Whether the Local Approval Requirement Violates Separation of Powers*

You first ask whether the local approval requirement improperly delegates to local governments a function of the executive branch of State government and thereby violates the separation of powers principle of the State Constitution.

#### 1. Separation of Powers

The Maryland Constitution states, in relevant part, "That the Legislative, Executive, and Judicial powers of Government ought to be forever separate and distinct from each other ...." Maryland Declaration of Rights, Article 8. A core function of the Legislature under the Constitution is its power to make laws. *See Christ v. Department of Natural Resources*, 335 Md. 427, 441-45, 644 A.2d 34 (1994). In carrying out its law-making function, the Legislature frequently authorizes both executive branch agencies and political subdivisions to carry out various governmental functions. We understand your reference to "separation of powers" to be whether the Legislature intruded on the sphere of the Executive Branch by delegating certain authority to local governments with respect to these housing finance programs.

#### 2. State Laws Contingent on Local Government Action

It has long been established that the General Assembly has broad latitude in placing contingencies on the effectiveness of legislation. *See State v. Kirkley,* 29 Md. 85, 102 (1868); *Baltimore v. Clunet,* 23 Md. 449, 469-470 (1865). "A valid law may be passed, to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties." *Clunet, supra.* Making one governmental entity's action contingent on approval by another governmental entity is a common way of creating checks and balances in government and, indeed, appears in the State Constitution itself. *See, e.g.,* Maryland Constitution, Article II, §10 (allowing for Senate confirmation of gubernatorial appointees).

The required assent may be that of a local government.  There are numerous examples of laws in which the Legislature has conferred powers on an executive branch agency, but made those powers contingent on, or constrained them by, powers exercised by a local government.  *See, e.g.,* Annotated Code of Maryland, Courts & Judicial Proceedings Article, §2-309 (providing for staffing and compensation of sheriffs' offices, subject to various county laws and procedures); Annotated Code of Maryland, Criminal Procedure Article, §2-102(b) (defining statewide arrest powers of police officers that depend in part on local government approval of mutual aid agreements); Annotated Code of Maryland, Education Article, §5-202(d) (eligibility of local school system for State financial assistance made contingent on extent of county funding of local schools).

To our knowledge, none of these legislative enactments has been found to violate the principle of separation of powers.  For example, in assessing the constitutionality of proposed legislation that would have authorized commercial gambling, subject to the enactment of a local ordinance approving gambling within a locality, this Office concluded that the proposal "raise[d] no separation of powers concerns."  80 *Opinions of the Attorney General* 151, 152, 158 (1995).  There appears to be no basis for reaching a different conclusion when the implementation of a State law in a locality is subject to approval, on a case by case basis, by the local government through an ordinance or resolution.

### 3.    Application to Local Approval Requirement

The Legislature exercised a core legislative function in enacting the laws governing RHPP and the Tax Credit Program.  It imposed various conditions for those programs, which DHCD has implemented in the comprehensive loan underwriting and approval process detailed above.  It made local approval an explicit condition for assistance under RHPP and an implicit condition, as interpreted by CDA and the courts, for assistance under the Tax Credit Program.  The inclusion of the local approval contingency in those laws was well within the Legislature's prerogative.  In enforcing that local approval requirement, DHCD is administering the law in accordance with legislative intent – a core executive function.  *See* Friedman, The Maryland State Constitution: A Reference Guide (2006) at 19.  If DHCD were to ignore the requirement, it arguably would be intruding on the legislative branch by effectively rewriting the law.

### B.    *Whether the Local Approval Requirement Violates Federal Law*

You ask whether the local approval requirement in State law is at odds with the federal law governing the Tax Credit Program. You also ask if the local approval requirement "defeat[s] the purposes of the [Tax Credit] program."

### 1.    **Federal Preemption of State Law**

Your question raises the issue whether the federal law governing the Tax Credit Program preempts the State law requiring local approval.  Under the Supremacy Clause of the federal constitution, federal law prevails over a conflicting State law. United States Constitution, Article VI, cl. 2.  However, federal statutes are not generally deemed to preempt State law unless it is "the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947); *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).  The congressional purpose may be manifested either explicitly in the federal statute ("express preemption") or implicitly in the federal scheme ("implied preemption").

Express preemption occurs when the federal government has explicitly foreclosed state action and acted to completely regulate a certain area by express language. *See Lorillard Tobacco Co., supra*.; *see also* 94 *Opinions of the Attorney General* 3, 5-10 (2009) (analyzing express preemption provision of the federal Health Insurance Portability and Accountability Act).  Implied preemption occurs when Congress intends federal law to "occupy the field" or if State law conflicts with federal law such that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.*" Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). Congressional intent to "occupy a given field can be inferred from the pervasiveness of federal regulation and/or the dominance of the federal interest in a particular area of legislative activity." *Massachusetts Ass'n of Health Maintenance Orgs. v. Ruthardt*, 194 F.3d 176, 179 (1st Cir. 1999). It may be drawn from the text of the federal statute, as well as the surrounding regulatory scheme and the federal government's intent in adopting the federal law. *Id*. at 179-180.

In the absence of federal preemption, state law may complement or supplement a federal statutory scheme. "[M]atters left unaddressed in such a [federal statutory] scheme are presumably left subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) (finding that California state laws on fraudulent conduct in banking matters were not preempted by the federal Financial Institutions, Reform, Recovery and Enforcement Act).

### 2. Federal Low Income Housing Tax Credit Law

As noted earlier, the federal Low Income Housing Tax Credit Law is part of the Internal Revenue Code. Under that law, a state housing credit agency must adopt a Qualified Allocation Plan ("QAP") prior to allocating any federal tax credits. 26 U.S.C. §42(m). A QAP is defined as:

... any plan

(i) which sets forth selection criteria to be used to determine housing priorities of the housing credit agency which are appropriate to local conditions,

(ii) which also gives preference in allocating housing credit dollar amounts among selected projects to

(I) projects serving the lowest income tenants,

(II) projects obligated to serve qualified tenants for the longest periods, and

(III) projects which are located in qualified census tracts (as defined in [§42(d)(5)(C)]) and the development of which contributes to a concerted community revitalization plan, and

> (iii) which provides a procedure that the agency (or an agent or other private contractor of such agency) will follow in monitoring the noncompliance with the provisions of this section and in notifying the Internal Revenue Service of such noncompliance which such agency becomes aware of and in monitoring for noncompliance with habitability standards through regular site visits.

26 U.S.C. §42(m)(1)(B). The federal statute also provides standards for the selection criteria applied by a state housing credit agency. It states:

> The selection criteria set forth in a qualified allocation plan must include
>
> (i) project location,
>
> (ii) housing needs characteristics,
>
> (iii) project characteristics, including whether the project includes the use of existing housing as part of a community revitalization plan,
>
> (iv) sponsor characteristics,
>
> (v) tenant populations with special housing needs,
>
> (vi) public housing waiting lists,
>
> (vii) tenant populations with individuals with children,
>
> (viii) projects intended for eventual tenant ownership,

> (ix) the energy efficiency of
> the project, and
>
> (x) the historic nature of the
> project.

26 U.S.C. §42(m)(1)(C). These are the only selection criteria imposed by the federal law. Nothing in the statute prohibits state housing credit agencies from including additional selection criteria in their QAPs.

### 3. Relation of Federal Statute to Local Approval Requirement

As is evident, the federal statute does not expressly preempt states from imposing additional selection criteria for projects assisted under the Tax Credit Program. Nor, in our view, does it implicitly preclude a state from adopting additional state criteria, such as the local approval requirement. The federal law establishing the program lacks the "pervasiveness" and "dominance" in the area of legislative activity that would lead a court to find implied preemption.

In certain respects, the local approval requirement in State law implements a factor expressed in the federal statute. In developing selection criteria that projects must meet to be eligible for federal tax benefits, a state is to look to the local needs of its jurisdictions – the selection criteria are to be applied "to determine housing priorities… appropriate to local conditions." 26 U.S.C. §42(m)(1)(B)(i). Moreover, under the federal statute, assistance may not be provided without obtaining at least the views of the local jurisdiction. The statute prohibits allocation of tax credits to a project unless the housing credit agency notifies "the chief executive officer (or the equivalent) of the local jurisdiction within which the building is located of such project and provides such individual a reasonable opportunity to comment on the project." 26 U.S.C. §42(m)(1)(A)(ii).

In sum, the federal law requires that (1) the local government is aware of the proposed project; (2) the local government has an opportunity to comment on the proposed project; (3) the proposed project is appropriate to local conditions; and (4) the proposed project meets the needs of the local jurisdiction and local tenant populations. The local approval requirement in State law appears

consistent with those objectives and, in our view, does not defeat the purpose of the Low Income Housing Tax Credit Law.

## III

## Conclusion

In our opinion, the local approval requirement, as designed by the General Assembly and implemented by DHCD, does not violate the separation of powers principle of the State Constitution. Moreover, the requirement is not at odds with the federal Low Income Housing Tax Credit Law and is not preempted by that law.[7]

Douglas F. Gansler
*Attorney General*

Anthony J. Mohan
*Assistant Attorney General*

Honora W. Sutor
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
*   Opinions and Advice*

---

7 You have not asked about, and we do not address, the impact, if any, of the federal Fair Housing Act in relation to these programs. *See In re Adoption of the 2003 Low Income Housing Tax Credit Qualified Allocation Plan*, 848 A.2d 1, 17-18 (N.J. App. Div.), *cert. denied*, 861 A.2d 846 (2004) (state agency's administration of Low Income Housing Tax Credit program did not violate federal Fair Housing Act).